### WELLS-FARGO & COMPANY EXPRESS v. L. SOBEL.

#### Decided February 2, 1910.

**1.—Master and Servant—Assault by Servant—Liability of Master.**

When one acts through an agent he trusts the agent as to the manner of performance, and it must be assumed that he is satisfied the agent would act as he, the principal, would act under the circumstances. If this trust or confidence be misplaced, and if the agent mingles his personal resentment with the performance of his duties as agent, and commits an assault upon a party having business with him in his capacity as agent, the master is responsible. It would be otherwise if the assault was committed in resentment of offensive words or conduct at a time when the agent was not engaged in the conduct of his principal's business.

**2.—Same.**

In a suit for damages for an assault and personal injuries inflicted by an employee of an express company, evidence considered and held to sustain a finding that the assault was committed while the employee was engaged in the performance and within the scope of his duties to the company, and that the company was responsible for the injuries.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*Crook, Lord & Lawhon,* for appellant.—The plaintiff must allege that the person whose act caused the injury was the servant of the defendant, and he must allege matters of fact to show that the act complained of was within the scope of such agent's or servant's authority under his employment. St. Louis S. W. Ry. Co. v. Mayfield, 35 Texas Civ. App., 82; 13 Am. & Eng. Ency. Pleading and Practice, 922; 26 Cyc., 1571-2.

The relation of master and servant must exist between the defendant and the person for whose acts liability is claimed, and it must be shown that the acts complained of were done within the scope of such agent's or servant's employment and in furtherance of the master's business at the time of the commission of such acts. Lytle v. Crescent News Co., 27 Texas Civ. App., 530; Galveston, H. & S. A. Ry. Co. v. Currie, 100 Texas, 136; Houston & T. C. Ry. Co. v. Bell, 97 Texas, 71; International & G. N. R. Co. v. Anderson, 82 Texas, 516; Texas & P. Ry. Co. v. Black, 87 Texas, 160; Fairbanks v. Boston Storage & W. Co., 109 Am. St. Rep., 646; 26 Cyc., 1534 to 1539; 20 Am. & Eng. Ency Law, 171; Perlstone v. American Exp. Co., 52 L. R. A., 959; McDermott v. American Brewing Co., 52 L. R. A., 684.

If an act done by the servant while engaged in the work of the master is in resentment of personal affronts or as a punishment for conduct of plaintiff, and not done as a means or for the purpose of performing the work of the master, but for the accomplishment of the independent or mischievous purpose of the servant, such act is not the act of the master, and the master will not be liable therefor. Galveston, H. & S. A. Ry. Co. v. Currie, 100 Texas, 136; Houston & T. C. R. Co. v. Bell, 75 Texas, 484.

If the servant acts in his own behalf or for his own protection, he is not acting for the master, and the master will not be liable. Same authorities; also McDermott v. American Brewing Co., 52 L. R. A., 684; Lafitte v. New Orleans City & L. R. Co., 12 L. R. A., 337.

*Rodman S. Cosby* and *A. D. Lipscomb,* for appellee.—Where there has been a mingling of personal motive or purpose of the servant with the doing of his work for his employer, it is well settled in this State that the presence of such motive in the mind of the servant does not affect the master's liability, when the doing of the work is in the line of the servant's duty. The turning aside from the master's business must be complete. Galveston, H. & S. A. Ry. Co. v. Currie, 100 Texas, 136; Burnett v. Oechsner, 92 Texas, 588; International & G. N. R. Co. v. Cooper, 88 Texas, 607.

REESE, ASSOCIATE JUSTICE.—L. Sobel instituted this action against Wells-Fargo & Co. Express, a corporation, to recover $2,000 actual and $3,000 exemplary damages for an assault alleged to have been committed upon him by one D. J. Coleman, an employe of defendant, while the said Coleman was engaged in the performance of his duties as such employe, the said employe then and there, in making such assault, acting within the scope of his duties as such. It was also alleged that, after the assault had been committed, defendant,

with a full knowledge of the circumstances, ratified the same. The defendant by way of answer urged a general demurrer and several special exceptions to the petition. The general demurrer and all the special. exceptions but one were sustained, whereupon the plaintiff filed a trial amendment, and defendant by supplemental answer renewed its special exceptions to the petition as amended, which were overruled. Defendant also made general denial.

Upon a trial without a jury the court rendered judgment for plaintiff for $250 actual damages. From the judgment defendant appeals. The trial court filed conclusions of fact and law.

The first three assignments of error assail the ruling of the trial court in overruling several special exceptions to the petition. There is no merit in either of the assignments, nor the several propositions thereunder, and they are severally overruled.

The other assignments attack the judgment on the ground generally that the undisputed evidence shows that the man Coleman, in making the assault upon appellee, was not acting within the scope of his employment as agent and servant of appellant, but independently and in his own private quarrel, and that, therefore, appellant is not liable. By way of answer to these assignments, which we have concluded present no error, we here set out the conclusions of fact and law of the trial court, which are here adopted as our conclusions.

"The plaintiff, a merchant in the city of Beaumont, in the latter part of 1907, had a shipment of gloves to him from the wholesale house of Mason, Campbell & Co., at Poughkeepsie, N. Y., same coming into Beaumont through the defendant company, which is a corporation and operates as a common carrier of goods by rail, maintaining an office in the city of Beaumont then under the superintendence of the witness Smith. When the goods arrived at the Beaumont office of defendant they were sent to plaintiff's place of business by defendant's local delivery wagon. The package appearing to be in bad order, plaintiff declined to take them without their being checked up and compared with his bill received from the shipper. The driver for defendant carried them back to the office, as the rules of the company require such matters to be adjusted at the office. Later plaintiff went to defendant's office with the bill, and was referred to the 'on-hand' clerk, the witness Coleman. The gloves were counted by this clerk two or more times with varying results, sometimes finding more and sometimes less than called for by the bill, and plaintiff, who was present and saw the goods opened, accepted them, saying that if there were only two or three pairs short he would make no complaint. At his shop, however, he counted them himself, and found the package wanting in fourteen pairs called for by the bill. He promptly returned to the office of defendant, but, it appearing that the clerks had gone for the day, he did not take the matter up with them until the next day. On the next day the defendant, through its superintendent and 'on-hand' clerk, declined to reopen the question, declaring it settled by the plaintiff's having receipted for the goods as being in good order. Plaintiff then sent forward his check to Mason, Campbell & Co., for the amount of the bill less the price of the fourteen pairs, together with an affidavit declaring that the

package had been delivered to him by defendant short of fourteen pairs, suggesting that they put in their claim against the express company. This course was taken by Mason, Campbell & Co., the claim being lodged by them with the American Express Co., defendant's connecting carrier. The file of papers and correspondence relating to the claim finally came to the office of defendant at Beaumont, and the report from defendant through its 'on-hand' clerk was that the goods had been receipted for as in good order by plaintiff. This report reached Mason, Campbell & Co., who then wrote to the plaintiff demanding pay for the balance of the bill. Plaintiff sent a reply, saying that he did not intend to pay for what the clerks of the express company stole, and insisting that his statement of the quantity of the gloves was correct, and claiming that the clerk had miscounted. He referred to the clerk as a shyster. This letter in turn found its way into the files of the defendant company and was by them referred to the 'on-hand' clerk, the witness Coleman, for his attention. On reading the letter he appeared to have shown it to others of the clerks and employes of defendant company. On the same day he, Coleman, went one or more times to plaintiff's place of business, telling plaintiff he should come to the express office and adjust the claim of shortage, and the driver of one of the defendant's wagons also left a message or request with the plaintiff. Plaintiff, having no clerk, waited for his children to return from school so that he could leave the store in their charge, and immediately afterwards went to the office of defendant, as requested, thinking that the claim would be adjusted so as to relieve him of claim from Mason, Campbell & Co. On reaching the office he was directed into the rear part of the building, where Coleman was standing by a barrel with the file of papers relating to the claim in his hand and another clerk close by, and as plaintiff came up he, Coleman, reproached plaintiff about the insulting letter. Then after some words of conciliation on plaintiff's part, the witness Coleman produced a paper for plaintiff to sign, and by commands and threats, and threatening gestures and manner, compelled plaintiff to sign same, the plaintiff signing without reading; then as plaintiff raised his head from a stooping posture, assumed in signing the paper over the barrel, the witness Coleman struck plaintiff in the mouth, loosening one of his teeth, which afterwards fell out, and at the same time threatening further violence if complaint should be filed with the civil authorities. The bystanding clerk and the witness Coleman then signed as witnesses the document which plaintiff had thus been compelled to sign, and same became part of the files of the office relating to this claim, and was regularly thereafter used by the defendant in its correspondence with the American Express Co., and in the usual course of its business relating to the claim. The substance of the document which the plaintiff was thus compelled to sign was a withdrawal of his claim for a shortage in the package of gloves and a retraction of his remarks as to thieves among the express company's clerks. The obtaining of a statement in regard to the claim from plaintiff was in the line of employment of the 'on-hand' clerk,

Coleman. I estimate the actual damage of plaintiff, arising out of the assault, at two hundred and fifty dollars.

"*Conclusions of law.*—It being within the line of employment of the witness Coleman, as an agent of defendant, to discuss the claim with plaintiff, and to obtain statements and other evidence tending to settle the question of defendant's liability for the shortage, it is my conclusion that the defendant is liable for the injury caused by Coleman to plaintiff in the performance of the service. Had the assault been committed merely in resentment of the offensive words contained in the letter, as would have been the necessary conclusion if Coleman had committed the assault at the time when he went to request the attendance of the plaintiff at the office, then the defendant would clearly not have been liable. But the witness, to whom certain business of defendant was customarily entrusted as agent, chose to make the assault and forcibly exacted retraction as a part of the performance of this customary service for the defendant. When one acts through an agent he trusts the agent as to the manner of performance, and it must be assumed that he has selected the agent because satisfied that the agent would act as he would act under the circumstances. If this trust or confidence be misplaced, and if the agent, foregoing his opportunities to vindicate himself in his personal capacity, chooses rather to mingle his personal resentment with his service as agent, and share his responsibility for it with his employer, the employer who has selected him has little ground to complain of being held responsible for his wrongful acts, while the individual who, unable to select the person with whom he will transact such business as he has with the principal, suffers from the misconduct of the agent in the transaction of the business, may reasonably expect the principal to discharge the liability for such misconduct. It is impossible to separate the performance of a service as agent from the manner of the performance.

"The principal has the selection of his agent, and where such principal chooses to act, or must perforce act through its agents, their wrongful acts committed in the performance of the service are the wrongful acts of the principal. In estimating the damage I have taken into account the wrongful conduct of plaintiff in using the insulting language."

We find no error, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.