## WESTERN UNION TELEGRAPH CO. v. PHILLIPS. (No. 2697.)

(Court of Civil Appeals of Texas. Amarillo. May 26, 1926.)

**1. New trial ⬥143(5) — Evidence held to show verdict was quotient verdict.**

Evidence *held* to show that, before vote upon amount of damages was taken, it was understood by several of jurors that quotient to be obtained by using number of jurors as a divisor and total of sums shown on tickets as the dividend would be amount of verdict to be returned, and that verdict was a quotient verdict.

**2. New trial ⬥56—Misconduct of jurors in connection with quotient verdict held material (Rev. St. 1925, art. 2234).**

Misconduct of jurors, in adding damages for which different jurors voted and dividing by number of jurors, *held* material, so as to justify new trial, under Rev. St. 1925, art. 2234, where ideas of different jurors were changed and fixed by quotient, and proposal to fix different sum was abandoned because one juror insisted that quotient be adopted.

**3. Appeal and error ⬷⟿1069(1)—Certainty that misconduct of jury materially affected judgment is not required in order to reverse judgment.**

Certainty that misconduct of jury materially affected judgment is not required in order to reverse the judgment, test being whether record exhibits ground for reasonable doubt as to purity of the verdict.

Appeal from Lubbock County Court; Chas. Nordyke, Judge.

Action by Fred Phillips against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Wilson & Randal, of Lubbock, and J. I. Kilpatrick, Jr., of Cleburne, for appellant.

Robt. H. Bean and Bean & Klett, all of Lubbock, for appellee.

HALL, C. J. The appellee, Phillips, sued the appellant to recover damages in the sum of $1,000 for alleged negligence on the part of appellant in failing to promptly transmit and deliver a message to him, announcing the death of a relative near Marlin, Tex..

The first contention to be considered is predicated upon the misconduct of the jury in returning a quotient verdict. One ground of the motion for new trial is that, in arriving at their verdict, the jurors entered into an agreement whereby each man was to take a slip of paper and write thereon the amount of damages which he thought the plaintiff was entitled to recover, and that they agreed that the six amounts so written should be added and the total divided by six, the number of jurors, and that the result would be their verdict; that this agreement was carried out, and resulted in a verdict in the sum of $433.

Upon the trial of the motion, the first witness introduced was the juror Collier, who testified that, after they had agreed that the company was guilty of negligence, and that the plaintiff had been damaged:

"Some one suggested that we take a vote, take the total amount and divide it by six to come to a conclusion. That was suggested as a good idea, and I tore up the six pieces of paper and passed them around. Each man put down his amount, and I totaled it up and divided it by six. The result was $433.33⅓, I believe. I called out the amount, and Mr. Countess suggested that we make it $500 even money. I didn't say anything. It was Mr. Fine or Mr. Griffin, I can't remember which man it was, but whoever it was said he would be bull-headed, and suggested we leave it like it was. Mr. Countess said, 'All right, just leave it like it is.' I asked them if they were all satisfied at $433, and they said, 'All right,' and then we were through. * * * No man had ever stated up to this time what he felt the damage was in dollars and cents. When we took up this proposition of voting like we did,

it was taken on the suggestion of Mr. Fine or Mr. Griffin, and the idea was to come to a quick conclusion or a quick amount of damages that he should have. I don't know, I wouldn't swear whether we had an agreement that we would abide by it or not; I wouldn't say that, because one man did object to it. Mr. Countess suggested to make it $500. There was not any one made any objections but the fellow who made the proposition. He just stated that he was bull-headed. * * * As to whether it was my understanding with reference to whether or not the sum reached should be the verdict of the jury, I say, well I think so."

On cross-examination, he testified:

"It was my understanding, when the slips of paper were passed to the jurors and they put down their amounts and the sums were added and divided by six, that the result would be our verdict, if it was agreeable. We didn't make it so it couldn't be changed."

The juror Countess, after detailing the facts with reference to slips of paper being passed out to the jurors, the amounts voted by each being added and then divided by six, said:

"In my own mind it was my understanding at the time these slips of paper were passed out to us that the sums would be added and divided by six, and that the result would be our verdict. * * * I felt from the different estimates that had been made by the other jurors in our general discussion of the amounts before balloting that the manner we used would be a fair way to average up the amounts. * * * Some of the amounts on those pieces of paper were bound to have been less than 433, and some of them may have been 750. The lowest one was not less than 250, I believe, and the highest, as I remember, was 750."

The juror Fisher testified:

"As to my own understanding as to whether or not those sums, when added and divided by six, that the result should be our verdict, I felt that it would be fair. When the slips were passed out, I put down the amount I thought he was due, $250. * * * At the time the slips were passed out and the sums put down by the jurors, it was my understanding that when those sums were divided by six the result would constitute the verdict of the jury, and the result was the verdict of the jury. When Mr. Collier announced the amount would be $433, he asked if that would be satisfactory; and Mr. Countess said, 'Let's make it $500;' and Mr. Griffin said, 'I will be bull-headed.' Then Mr. Countess said, 'All right, let's leave it like it is;' and $433 was agreed upon. When I voted $250, I thought at that time it was all that plaintiff was entitled to recover."

The juror Fine testified in part:

"It was my understanding that when those slips of paper were collected and the numbers added and then divided by six, that the result would be our verdict. I understood it would be that way, and the amount reached was the verdict of the jury. I was led to conclude that

the result of the sums added should constitute the verdict of the jury by reason that it was a fair way to get this settled and adjusted."

The juror Griffin testified:

That it was his understanding that, at the time the papers were handed out and the jurors put their sums on the pieces of paper, the total of such amounts should be divided by six and that the result should constitute the verdict of the jury. That it was his understanding that they did not then know what it would come to, but whatever amount it would come to would be satisfactory. "It was discussed about dividing the total sum when arrived at by six, and something was said about whether or not the number arrived at would be the verdict of the jury. We discussed passing slips of paper around and some of them said, 'Would that be final?' and they seemed to—well, it seemed to be the conclusion that the jury agreed that the result of the six numbers when divided by six would be the verdict of the jury. I asked that question, I think, 'Will this be final?' and some of them said, 'Yes.' I think it was the foreman. I never heard any objection raised to the statement of the foreman that that would be final."

[1, 2] We think this testimony is sufficient to show that the jury returned a quotient verdict; that before the vote upon the amount of damages to be awarded was taken, it was understood by several of the jurors that the quotient to be obtained by using the number of the jurors as a divisor and the total of the sums shown on the tickets as the dividend would be the amount of the verdict to be returned. R. S. 1925, art. 2234, provides that, where the ground of the motion for new trial is the misconduct of the jury, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such conduct proves to be material. It is clear that, in the absence of the plan agreed to and executed in arriving at the amount of the verdict, it would never have been such an unusual, uneven, and chance sum as exactly $433. That the misconduct materially affected the amount of the verdict is apparent from the fact that each juror had a different idea originally as to the amount of the damages, which was changed and fixed by the quotient, and from the further fact that, after the quotient had been stated, one of the jurors suggested that it be made even $500, and did not insist upon it because another of the jurors was "bull-headed," and was determined to stand by and hold the others under the agreement to the amount shown by the quotient. No juror originally thought that the damages should be exactly $433. Their estimates ranged from $250 to $750, and, in order to settle their differences, they agreed to adopt the quotient method, and did adopt it, with the result stated.

"A vicious effect must be assumed to have resulted upon verdict from jury's misconduct, where it appears that one or more jurors were influenced." G. C. & S. F. Ry. Co. v. Harvey (Tex. Com. App.) 278 S. W. 839.

[3] Certainty that the misconduct materially affected the judgment is not required in order to reverse the judgment, the test being whether the record exhibits ground for reasonable doubt as to purity of the verdict. The testimony quoted above shows that several of the jurors entered into the plan suggested for arriving at the amount of the verdict, with the definite understanding that the quotient obtained would be binding upon all, and, under the holding in the above case, it is sufficient to require a reversal of the judgment. Moore v. Ivey (Tex. Com. App.) 277 S. W. 106; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1105; Bryan & College Interurban Ry. Co. v. Ellison (Tex. Civ. App.) 241 S. W. 542; Houston & Texas Central Ry. Co. v. Gray, 105 Tex. 42, 143 S. W. 606; Texas Midland Ry. Co. v. Atherton (Tex. Civ. App.) 123 S. W. 704; 20 R. C. L. 243, § 28.

The alleged error of the court in admitting the testimony of Mrs. Boyd will probably not occur on another trial, and it is therefore unnecessary to discuss it.

Special issue No. 1 of the court's charge did not assume that the plaintiff was prevented from attending the funeral, and was not upon the weight of the testimony. The two remaining propositions relate to the sufficiency of the testimony to support the verdict and judgment, and, since the cause must be remanded for another trial, we will not discuss them further than to say that the court did not err in refusing to give the appellant's peremptory instruction.

On account of the misconduct of the jury, the judgment is reversed, and the cause is remanded.