## CENTRAL MOTOR CO. v. GALLO.

### No. 1734.

Court of Civil Appeals of Texas. Waco.

April 23, 1936.

Rehearing Denied May 28, 1936.

Richey, Sheehy & Teeling, of Waco, for appellant.

Weatherby, Rogers & Scott, of Waco, for appellee.

ALEXANDER, Justice.

Paul Gallo brought this suit against Central Motor Company, a corporation, to recover damages for personal injuries sustained by him as the result of an assault on his person by one A. J. Crow, an employee of the defendant corporation. The material facts are substantially these: The defendant was engaged in part in the repair of automobiles. A. J. Crow was manager of its service department where the repair work was done. The defendant corporation did certain repair work on plaintiff's automobile, and plaintiff paid therefor. He later returned to the shop and claimed that the work was unsatisfactory. He was a traveling man, and needed his automobile to travel over his territory. He insisted that Crow give him a letter authorizing him to have the defects in his automobile repaired en route if necessary and to charge the cost thereof to the defendant. An argument arose between the plaintiff and Crow over the character of work that had been done and the failure of Crow to give plaintiff the letter as requested by him, and as a result Crow struck the plaintiff on the jaw and severely injured him. The jury,

in answer to special issues, found that the act of Crow in striking plaintiff was done in the scope of his employment as an employee of the defendant and not solely because of any personal animosity of Crow against the plaintiff, that an ordinarily prudent person situated as Crow was would not have thought that he was about to be assaulted by the plaintiff, and that the unnecessary force used by Crow in striking the plaintiff was a proximate cause of plaintiff's injuries, and that plaintiff sustained actual damages in the sum of $4,630. Judgment was entered for the plaintiff for the sum fixed by the jury, and the defendant appealed.

Appellant's first contention is that, since Crow was not employed to use any manner of force or compulsion on the patrons of the appellant and his employment did not contemplate the use of such force, the appellant was not liable in damages for an assault intentionally committed by him. We cannot sustain this contention. The rule of law applicable is stated in Corpus Juris as follows: "If the act complained of was within the scope of the servant's authority, the master will be liable, although it constituted an abuse or excess of the authority conferred. The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on a third person." 39 C.J. p. 1285, § 1476.

The real test of the master's liability is, not whether the servant's employment contemplated the use of force or whether the act complained of was done in accordance with the master's instructions, but whether the act complained of arose directly out of and was done in the prosecution of the business that the servant was employed to do. Here the defendant was engaged in repairing automobiles. It placed Crow in charge of that branch of its business. He was the manager and the highest authority in that department. It was his duty to meet the customers, take orders for work, see that the work was properly performed by the mechanics, fix the prices to be charged therefor, and to adjust any disputes or differences with the customers. The appellant impliedly invited the public, including the appellee, to transact business of the nature carried on in that department with its manager Crow, and the appellee had a right to assume that he could transact such business in safety and without being assaulted by appellant's manager so long as his own conduct did not warrant such assault. While the appellee was attempting to transact business within the limits of the implied invitation, a dispute arose as to the manner in which the business had been, and should be, handled, and as a result he was assaulted by appellant's manager. The dispute arose directly out of the matter committed to the servant and as a result of the servant's attempt to perform the task committed to him. It culminated in the assault complained of, and, if said assault was unwarranted, as found by the jury, the master is liable for the damages resulting therefrom. Wells Fargo & Co. Express v. Sobel, 59 Tex.Civ.App. 62, 125 S.W. 925 (writ ref.); Taylor v. Esparza (Tex.Civ.App.) 8 S.W. (2d) 288 (writ dis.); Gulf, C. & S. F. Ry. Co. v. Cobb (Tex.Civ.App.) 45 S.W.(2d) 323 (writ dis.); Rucker v. Barker, 108 Tex. 280, 192 S.W. 528; Cameron Compress Co. v. Kubecka (Tex.Civ.App.) 283 S.W. 285 (writ ref.); 39 C.J. 1285.

Appellant complains of the alleged misconduct of the jury in the manner of arriving at the amount of damages to be awarded. After the jury had determined the issues fixing appellant's liability, they next considered the issue as to the amount of damages to be awarded. It soon developed that they would have difficulty in answering that issue, and it was then agreed that each juror write the amount of his verdict and that these items be added together and divided by twelve and that the quotient represent the verdict of the jury. There were three main items to be considered in order to properly answer the issue as to the amount of damages to be awarded. The first item was the amount that had been expended for dental bills. The jury readily agreed that this item should be $335. The next item was the amount to be awarded for loss of time. It was agreed that appellant had lost seven months' time, but there was a difference of opinion as to the value of his time per month. By using the method above outlined, the quotient arrived at was $160 per month, or a total sum of $1,120 to be awarded for loss of time. The third item to be considered was the amount of damages to be awarded for mental and physical suffering. Some jurors

suggested the amount to be awarded for this item as low as $500, while others voted as high as $8,500. The quotient arrived at was $3,175. These three items were then added together, and the total of $4,630 was returned as the verdict of the jury. There is no dispute in the evidence as to the method used in arriving at the amount that was actually awarded as damages, but there is some dispute as to what occurred both before and after the calculation of the amount to be awarded. Only ten of the jurors testified on the motion for new trial. Two of them testified that it was agreed in advance that, whatever the quotient should be, that amount should represent the verdict of the jury. They testified that they felt bound by the result when so ascertained and that otherwise they would not have consented to the verdict as returned. They also testified that no vote was taken on the verdict after the quotient had been ascertained. Six other jurors testified that no express understanding was had beforehand as to whether or not the jury would be bound by the result so ascertained. Two of the jurors who had had some previous experience in serving on juries testified that it was understood in advance that no one would be bound by the result and that each one would be permitted to vote as he pleased on the verdict after the amount thereof had been ascertained. After the quotient of $4,630 had been ascertained, one juror suggested that they make the amount of the verdict "even money" by raising it to $5,000, but others objected and said, "We have already agreed on this other so just let it stand as we agreed." The foreman then called for a rising vote on the verdict and all of the jurors stood up.

While there was some dispute in the evidence as to whether the jurors agreed in advance to accept the quotient when ascertained under the plan outlined as the verdict of the jury, there is no dispute in the evidence that resort was had to this unlawful method to ascertain the amount of liability and that the amount so ascertained was actually adopted as the verdict of the jury. It can hardly be doubted that resort to this unlawful method constituted misconduct of the jury. The purity

of the verdict cannot be preserved and the judgments of the courts will not be respected if jurors are allowed to employ such haphazard, uncertain methods for determining the amount of compensation to be paid for an injury. Western Union Telegraph Co. v. Phillips (Tex.Civ.App.) 285 S.W. 665; Galveston, H. & S. A. Ry. Co. v. Brassell (Tex.Civ.App.) 173 S.W. 522; Texas Midland R. R. v. Atherton (Tex. Civ.App.) 123 S.W. 704; Whisenant v. Schawe (Tex.Civ.App.) 141 S.W. 146; People's Ice Co. v. Nowling (Tex.Civ.App.) 16 S.W.(2d) 976. It having been established that misconduct occurred, it becomes our duty to reverse the judgment of the trial court for failure to grant a new trial if the evidence leaves it reasonably doubtful whether such misconduct affected the verdict. Casstevens v. Texas & Pacific Ry. Co., 119 Tex. 456, 32 S.W.(2d) 637, 73 A. L.R. 89; Texas & Pacific Ry. Co. v. Van Zandt (Tex.Com.App.) 44 S.W.(2d) 950; Dallas Railway & Terminal Co. v. Garner (Tex.Com.App.) 63 S.W.(2d) 542. The results ascertained in this unlawful method were actually adopted as the verdict of the jury. At least two of the jurors testified positively that they understood in advance that they were to be bound by the result when it was ascertained by the quotient method, and that but for their previous agreement to be bound thereby they would not have consented to the verdict as returned. It is true there was evidence that the jury voted on and adopted the quotient as ascertained as the verdict of the jury after the amount thereof had become fully known to all of the jurors, but we attach but little importance to this procedure. It merely evidenced a continued willingness to adopt an improper method for determining the extent of liability. Western Union Telegraph Co. v. Phillips (Tex.Civ.App.) 285 S.W. 665; Texas Midland R. R. v. Atherton (Tex.Civ.App.) 123 S.W. 704. Considering the record as a whole, we think it reflects that the jury was guilty of such misconduct affecting the verdict as requires the granting of a new trial.

The judgment of the trial court is reversed and the cause remanded for a new trial.