(No. 4412-)

WALTER JACKSON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 13, 1952.*

SIDNEY LYON, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

Claimant, Walter Jackson, filed his claim in this Court seeking to recover for injuries sustained by reason of being struck in the left ankle by a bullet discharged from the gun of one Elmer Johnson, a State employee, which incident occurred on November 6, 1950 at the Giles Avenue Armory in the City of Chicago, Illinois.

On the evening of November 6, 1950, the Armory was rented or leased to the Taxicab Owners and Chauffeurs Association for the purpose of holding a mass meeting for Congressman William L. Dawson, the meeting being of a political nature. The testimony shows that about 10:45 P.M. an announcement was made that free refreshments would be served in the southwest corner of the Armory, and immediately the crowd became excited and disorderly, and rushed toward the refreshment stand. The Departmental Report filed in this case, signed by Leo M. Boyle, the Adjutant General, states:

"Elmer Johnson, the Armory watchman on duty, observing the crowd was excited and acting disorderly and behaving in such a manner, which would break down the refreshment stand and cause damage to State property. . . . . ."

There is no dispute in the testimony that the Armory watchman, Elmer Johnson, was wearing a gun at the time, and that he tried to restore order. There is no question that he drew the gun, and that the gun was discharged, and struck the claimant in the left foot. The evidence, without contradiction, shows that the commanding officer knew that the watchman carried a gun, since on several previous occasions the Armory had been broken into.

The report of Colonel William O. R. Bourne, Armory Custodian, which was made a part of the Departmental Report, shows that the Armory was rented for the purpose stated, and that it was the duty of Elmer Johnson, the janitor, to be present at all meetings, military and civilian, and to keep the premises clean and orderly at all times. The statement of Elmer Johnson, the watchman, attached to and made a part of the Departmental Report, sets out the fact that the crowd became very disorderly when free refreshments were announced, rushed toward the lunch stand, and it was evident that the property of the State was in danger of being damaged, because he was unable to keep the crowd back and restore order. After observing the crowd was disorderly, and State property was in danger of being damaged, he went to his locker to get his pistol, or revolver, in order to help discipline the crowd; and, that, while the pistol was in his possession, and he was attempting to preserve order, it was discharged, either accidentally or otherwise, and struck claimant in the foot.

A Supplemental Departmental Report was filed in this Court on June 5, 1951, which report was dated

May 14, 1951, signed by Leo M. Boyle, the Adjutant General, in which it was stated that Elmer Johnson, the watchman, was not required or authorized to carry a revolver or pistol in connection with his duties as a watchman.

The pertinent question for the Court to determine in this case is whether or not the relationship of Master and Servant exists between the State of Illinois and Elmer Johnson, the Armory watchman, at the time of the alleged incident. It is pertinent to note on this phase of the case that the State admitted it was the duty of Elmer Johnson, the Armory watchman, to be present at the time of the political meeting, and further admitted that it was the duty of said watchman to keep the place orderly. Under such a situation, it is the Court's opinion that where the facts stand uncontradicted, as they do in this case, that Elmer Johnson, the Armory watchman, was in the performance of his duties in attempting to restore order, and to save State property, and that the claimant was injured as a result thereof.

There is nothing in the record to indicate that claimant, outside of the fact that he was part of the crowd, did anything to provoke or bring about the assault upon him by the watchman, Elmer Johnson.

In the case of *Metzler* vs. *Layton*, 373 Ill. 88, the Court, on pages 91 and 92, held:

"An office manager has the duty of protecting the property and business of his employer placed under his control, and that duty, by the very character of his position, is more comprehensive than is the duty of a mere employee or special servant. His employer is responsible for his acts done in safeguarding its property, even though the manager acts unwisely. In *Central Motor Co.* vs. *Gallo*, 94 S.W. (2d) 821, the Court said: "The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused

by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on a third person."

There is no dispute from the admission by the State that the duties of the watchman were to protect State property, and to preserve order. There is no dispute in the evidence that Elmer Johnson, the Armory watchman, was attempting to restore order, and to protect State property. It is the opinion of the Court that this brings the case directly within the rule announced in the case of *Metzler* vs. *Layton, supra.*

The medical testimony shows that the claimant sustained a comminuted fracture of the cuneiform bone of the left foot. The record shows that the claimant was in the Cook County Hospital, where he was taken from the Michael Reese Hospital, and remained there for twenty days; that the claimant had his left foot in a cast for three weeks; that the bullet hit the bone in claimant's foot and emerged from the bottom thereof; and that the claimant was incapacitated for a month after the incident. The claimant offered in evidence a bill of the Cook County Hospital in the amount of $180.00, which apparently he became responsible for, although the testimony does not show that the bill was paid, nor was there any testimony that it was a reasonable and customary charge in the area. There was no testimony about loss of earnings, nor any disability with reference to the foot, other than when the claimant stands too much on his leg, it swells; or, when he does some heavy work, it hurts the bottom of his foot.

It is apparent from the record that the claimant suffered no really serious disability as the result of the incident in question, and that his only actual expense as a result of the accident was his hospital bill in the amount of $180.00.

From all of the testimony and the record in this case, it is apparent to the Court that the claimant was injured by an employee of the State of Illinois, when said employee was in the course of his employment, and while said employee was protecting the property of the State. For the reasons assigned, the claimant is entitled to an award.

An award is entered in favor of the claimant in the amount of Five Hundred Dollars ($500.00).