(No. 25158.—

MITCHELL METZLER, Appellee, *vs.* LEWIS LAYTON *et al.* Appellants.

*Opinion filed December 12, 1939—Rehearing denied Feb. 14, 1940.*

Wilson, C.J., and Shaw, J., dissenting.

John A. Bloomingston, for appellants.

Royal W. Irwin, for appellee.

Mr. Justice Farthing delivered the opinion of the court:

Mitchell Metzler, a minor, by his next friend, brought suit against Lewis Layton and the LaSalle Finance Corporation charging that Layton, as the servant of the corporation, assaulted plaintiff by shooting him with a pistol, causing severe injury. Judgment was given in the circuit court of Cook county in favor of plaintiff for $18,000 which was affirmed by the Appellate Court for the First District. We granted leave to appeal.

Appellants contend that the facts fail to show any liability upon the part of the corporation, as a matter of law, and that the finding of the jury that the conduct of appellant Layton was such as to show a total disregard for the safety and lives of others, was not justified.

Defendant corporation was in the loan business with offices at 160 North LaSalle street, Chicago, Illinois. It occupied two rooms on the seventh floor, containing a safe and office furniture. The office opened on a corridor running east and west. At the west end of the building there was a north and south corridor running past the elevators. Layton was office manager of the corporation. He received

payment of loans, and mortgages were executed in the office, but Layton had no authority to make loans. He did extra work for one Adelman by checking papers for H.O.L.C. loans. The only other employee was a stenographer named Harriet Jacobs.

Metzler was then about seventeen years of age, and more than six feet in height. He was employed as a messenger boy for Adelman, and was well known to Layton. On the morning of February 2, 1935, three strangers entered the loan office shortly after it was opened. They covered Layton with their guns, and one of them ordered him to face the wall, which he did. They then ordered Layton to tell where the money was and to open the safe. The safe was opened, and the robbers began a search of the office. At this point Metzler came into the office on an errand. Layton warned Metzler not to come in, but he entered, and the robbers shut him and Layton in a clothes closet. A minute or so elapsed and the robbers left. Layton knew this by the sound of the automatic door closer. Then he and Metzler, in trying to push the door open, ripped the cabinet from the wall and freed themselves. Layton ran out the door and down the corridor with a pistol in his hand; Metzler followed shortly. At the intersection of the corridors Layton looked toward the elevators. There was no one in sight. He turned and looked east down the hall, and saw some one running toward him yelling, as he claims, "Stick 'em up," though this is denied. Layton fired at the approaching figure. The man, who was Metzler, fell, and Layton shot him again. The first bullet took effect in Metzler's abdomen and the second went through his wrist. His injuries were serious.

Some days before the robbery the stenographer had told Layton about suspicious looking men coming into the office. He thought her suspicions justified and brought a pistol to the office.

The principal question on this appeal is whether the shooting of Metzler by Layton was done under such circum-

stances as to render the loan company liable for a wilful, reckless, or negligent act of an employee.

The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused his injury. To this general rule the case of master and servant is an exception, and the negligence of the servant is imputable to the master, if the relation existed at the time and in respect to the transaction out of which the injury arose.

In *Baum* v. *Industrial Com.* 288 Ill. 516, a cutter was killed by strikers who rushed into the shop, while he was attempting to defend his fellow-employees and the employer's property. Tomczyk, the cutter, did not have charge of the premises and was not a person in authority, such as a manager would be, but at page 520 this court said: "That the fellow-employees of deceased were not actually in danger of losing their lives cannot change the rule. The danger was clearly apparent to Tomczyk. He acted as any man would have acted under the circumstances. The rioters had rushed in without warning and threw the women employees into a panic. It was up to deceased to act or to abandon the workroom and its occupants to trespassing strangers, apparently bent upon doing damage to whatever came in their path. The situation was an unusual and unforeseen one and called for quick action. From every point of view it was the duty of deceased to defend himself and his employer and to assist his employer in defending the persons of his women co-workers."

An office manager has the duty of protecting the property and business of his employer placed under his control, and that duty, by the very character of his position, is more comprehensive than is the duty of a mere employee or special servant. His employer is responsible for his acts done in safeguarding its property, even though the manager acts unwisely. In *Central Motor Co.* v. *Gallo,* 94 S. W. (2d) 821, the court said: "The master who puts the servant in a place of trust or responsibility, or commits to him the

management of his business, or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on a third person."

While Layton was in charge of the loan office he was about the company's business, and not engaged in his private affairs. He was being paid by the defendant corporation. Pursuant to the stenographer's warning he brought a pistol to the office. He came to the office on the day in question to do company business. Nothing in the office belonged to Layton except a few personal items of little value. The furniture, papers and contents of safe and files were the property of the corporation. The robber's demanded of him to know where the money was kept,—not his own money, but that of the company. Appellants contend that when Layton rushed into the corridor in pursuit of the robbers he acted in his own behalf and not on behalf of the company, because none of the company's property had been taken, but only money belonging to Layton. We cannot agree. Layton, forced into a closet, could not know whether any of the company's property had been seized, nor did he pause to investigate when free. While the robbers rifled the safe and files they were moving against the valuables of the employer. The trespass was against the company, and at that moment Layton was involved in company affairs. Charged with the duty of protecting his employer's property, he acted at his first opportunity. That Layton had a private, personal motive for the chase does not exclude the interest of the corporation. The pursuit was the continuation of one transaction. In the case of *Gulf, Colorado and Sante Fe Railway Co.* v. *Cobb,* 45 S. W. (2d) 323, the court said: "The master is liable for any such act of the servant which, if isolated, would not be imputable to the master, but which is so con-

nected with and immediately grows out of another act of the servant imputable to the master, that both acts are treated as one indivisible tort, which, for the purposes of the master's liability, takes its color and quality from the earlier act."

We cannot presume to separate the acts of Layton as a servant from the acts of Layton as an individual where the entire occurrence was within such a very short space of time. In *New Ellerslie Fishing Club* v. *Stewart,* 93 S. W. 598, the club had an employee charged with the duty of preventing non-members from fishing on club premises. He engaged in altercation with a trespasser, and cut him with a knife. The court said: "It is difficult to define with accuracy the point at which the master's liability for the acts of his servants ends, but, under the facts of this case, Proctor, when he attempted to prevent appellee from fishing, and when the altercation between them commenced, was clearly acting within the scope of his employment, and the assault and battery complained of was merely a continuation of the first act. There was no appreciable length of time between them."

In the instant case it was a question for the jury to decide, and we will not reverse the finding of fact made by the jury.

It is contended that the company is not liable because the act was done beyond its premises. This contention is untenable. We hold the company liable for Layton's acts in this case.

As to the question of the reckless conduct charged to Layton, that was a matter for the jury to determine, and there is sufficient evidence to justify its finding. We find no error in the giving and refusal of instructions but it is not necessary to discuss these matters in detail.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

WILSON, C.J., and SHAW, J., dissenting.