George H. Chiribes, Petitioner-Appellant, v. Roger A. Bjorvik, Executor of the Last Will and Testament and Codicil of Samuel D. Chiribes, Deceased, Respondent-Appellee.

Gen. No. 52,360.

First District.

October 7, 1968.

Arthur Abraham, Goldberg and Goldberg, of Chicago, for appellant.

William T. Regas, of Chicago, for appellee.

MORAN, J.

The appellant, George Chiribes, appeals from an order of the Circuit Court of Cook County, denying his petition

which claimed an inter vivos gift of 2,000 shares of Sears, Roebuck stock.

The appellant's father, Samuel Chiribes, died on October 29, 1966. He was a retired employee of Sears, Roebuck & Company, and during the course of his employment acquired 2,000 shares of Sears stock. In addition, he owned 100 shares of Consolidated Edison Stock, a condominium apartment and personalty. The total value of his possessions, including the Sears stock, amounted to approximately $130,000. The Sears stock itself was worth $95,000 to $100,000.

In September, 1966, Samuel Chiribes was admitted to a nursing home and on October 17, 1966, he executed a will leaving 45% of his estate to Christian Science Churches, 25% to his son, George, 10% to his brother-in-law, Theodore Benson, 5% to his niece Arlene Jakowsky, 5% to Roy Baum, and two bequests of 5% each to two specific Christian Science Churches. On October 18, 1966, Samuel entered a hospital and on the same date petitioner entered the deceased's safety deposit box which was in the name of deceased and himself, emptied it, and also removed the sum of $5,900 from joint checking and savings accounts standing in his and the deceased's names. On October 20 the deceased executed a codicil in which he bequeathed the Consolidated Edison stock to Vivian Chiribes, the wife of his son, George, and the sum of $1,000 to each of three named children of Roger Bjorvik, his attorney, who was also the executor of his estate. He died nine days later, on October 29, 1966.

Bjorvik testified that after the funeral he discussed the provisions of the will with George and gave him a copy of the will and codicil. In a conference between the two, George indicated that he would contest the will and the executor then filed the will in Probate Court of Cook County on November 14, 1966. George Chiribes then filed a petition contending that his father had made

a gift of the 2,000 shares of Sears stock to him, but inadvertently failed to endorse the shares, and that the court should appoint a special administrator to defend and that this administrator should be required to endorse the shares over to the petitioner.

At the hearing George Chiribes and his wife, Vivian, testified that on May 20, 1966, George's father came to their house for dinner and that while Vivian was in the kitchen, the father gave George the 2,000 shares of Sears stock. George testified that his father told him that the gift was to make up for all the bad times they had when George was a boy. George then called in Vivian. She testified that her father-in-law stated that he had given the 2,000 shares of Sears stock to George. George then put the shares in a dresser drawer in the bedroom. Both testified that neither looked at the stock until November, 1966, and then discovered that the shares were unendorsed. George also testified that his father had a safety deposit box and that George had access to this box. The entry record for this box showed the last entry of Samuel Chiribes to be on May 12, 1966. George testified that he emptied the box on October 18, 1966, when his father entered the hospital and that the box contained nothing of value. He further testified that he later found the Consolidated Edison stock which would go to his wife, Vivian, under the will, in an envelope with the Sears stock.

Bernard Blair, the employer of George Chiribes, testified that he had two conversations with the deceased in June, 1966, and that in each of these conversations the deceased told him that he had given George the 2,000 shares of Sears stock. Hilmar Schmidt, an old friend of the deceased, testified that the deceased told him that he had given the shares to George.

Roy Baum, the operator of the nursing home in which the deceased resided for a short period before his admittance to a hospital, testified for the estate. He stated

that on October 19, 1966 in the hospital, Sam said in his and George's presence that he was going to sign a codicil the next day which would do something for Vivian. He further testified that a day or two after the funeral, George called and asked if he knew what was in the father's will. He told George he did not know and that after George met with the executor, George called and said, " 'Roy, what do you think? The will was just as I thought it would be.' He said Sam had left 55% to the churches. He says, 'You remember he was going to take such good care of Vivian? He left her about $2,500.00, and he left Rose's brother 10% of the estate.' He says, 'You are in it and it is 5% for you.' He says, 'Whether you were in it or not, I know that you are the one person Dad would want to take care of . . . .' I said, 'What was the size of the estate?' He said, 'Around $130,000.00.' "

Bjorvik testified that he prepared the last wills and testaments for both Samuel Chiribes and his deceased wife, Rose, and that he represented Samuel in the processing of Rose's estate. He called George Chiribes the day after the funeral to make an appointment with him for November 4, 1966, concerning the handling of Sam's estate and at that time he advised George they would have to make an appointment with the State of Illinois to inventory the contents of Sam's safety deposit box. George then said that he had entered the box and emptied it, but that he would bring the stock and other papers to Bjorvik's office so that they could go over them. George and his wife, Vivian, came to his office and he showed them a copy of Sam's last will and testament and the first codicil to it. After George read the will and the codicil, he "stated to me that he couldn't understand how his father could do this. He said that his father had told him on many occasions that if anything happened to him that he wouldn't have anything to worry about." He showed George a list of the assets of his father's estate which included the shares of Sears, Roebuck stock, and George

then said that on many occasions his father had offered him the stock but that he had refused the offer because he knew the father needed the dividends to live on and that at no time during this conference did George or his wife claim that his father had given him the stock. Bjorvik further testified that he saw decedent in August, 1966, in decedent's apartment for the purpose of going over the inheritance and estate tax returns in his wife's estate and that he told the deceased that he was trying to get a statement from Sears, Roebuck and Company relative to the Sears stock and as a result of the pension plan of Sears and his ownership of the stock there would be no estate tax, "and I showed him the returns scheduling the assets, and he signed the returns at that time." He next met decedent in October, 1966, when decedent was at the Anna Baum Nursing Home in Geneva, Illinois, for the purpose of modifying decedent's will. Decedent asked him how much 5% of his estate would amount to and Bjorvik told decedent that 5% would amount to about $6,000. He said he made the changes to the will suggested by the decedent and then returned to the nursing home where the codicil was signed by the decedent in the presence of two witnesses. Bjorvik testified that at no time during any of the conversation he had with the decedent, did the decedent tell him that he had given the Sears stock to his son, George Chiribes.

Mr. and Mrs. Theodore Benson (in-laws of the deceased), and their daughter testified that the deceased made statements about the alleged gift which would indicate that he considered the stock to still be his. The Bensons testified that in August, 1966, Mrs. Benson kidded the deceased about his recent purchase of a new Cadillac and stated that he must have sold some Sears stock to make the purchase. Mrs. Benson testified that the deceased said, "No, ma'am, I'll never sell Sears, but I did cash in some government bonds."

The Benson's daughter, Arlene Jakowsky, testified that in July, 1966, the deceased told her that he had more money than he could ever spend and also that he intended to leave $60,000 to $65,000 to his church. She further testified that she told him that that was an awful lot of money and he answered, "Well, I have much more than that." Both Arlene and her parents testified that the deceased did tell them that he made a gift of a Sears colored television set to George Chiribes in May, 1966.

Appellant contends that the testimony of Roy Baum, the Bensons, and their daughter was inadmissible since a donor may not impeach his own gift by his subsequent statements and that their testimony also was inadmissible because they were incompetent witnesses under section 2 of the Evidence Act. (Ill Rev Stats, c 51, § 2.) He further contends that Bjorvik's testimony was unworthy of belief because he was the attorney for the estate and that Bjorvik's testimony concerning his conversations with the decedent was also inadmissible on the grounds that a donor is not permitted to impeach his own gift by subsequent conduct or statements. Petri v. Rhein, 162 F Supp 834. Finally, appellant contends that the trial court's decision should be reversed with directions to enter an order that there was a valid gift because all of the evidence offered on behalf of appellee was incompetent and therefore appellant's evidence that there was a gift of Sears stock stands unrefuted.

 How ever much we might agree with the appellant's contentions, we will not consider any error in the rejection or admission of appellee's evidence, because appellant does not seek a new trial but only asks for an outright reversal. Any error in the admission or rejection of evidence by the trial court can be considered by the Appellate Court only when a new trial is requested, and not when the sole request is for an outright reversal. Millikin Nat. Bank of Decatur v. Shellabarger Grain Products

Co., 389 Ill 196 at 200, 58 NE2d 892; Gundich v. Emerson-Comstock Co., 21 Ill2d 117, at 128, 171 NE2d 60. Defendants have circumscribed the relief they may obtain in this court and waived any errors in the admission or exclusion of evidence by the trial court. McCottrell v. Benson, 32 Ill App2d 367, 178 NE2d 144; Walden v. Chicago & N. W. Ry. Co., 411 Ill 378, 104 NE2d 240.

■■ There was conflicting evidence before the trial court on whether Samuel Chiribes gave the Sears stock in question to appellant during his lifetime. "Where the trial court has seen and hears the witnesses and the testimony is contradictory, this court will not substitute its judgment as to the credibility of witnesses for that of the trial court, and will not disturb the findings unless they are manifestly against the weight of the evidence." Brown v. Zimmerman, 18 Ill2d 94, 163 NE2d 518. We do not believe that the trial court's finding was contrary to the manifest weight of the evidence in the present case. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

GOLDENHERSH and EBERSPACHER, JJ., concur.