THE ST. PAUL MERCURY INSURANCE COMPANY, Plaintiff-Appellee, v. STATISTICAL TABULATING CORP., Defendant-Appellant as to The St. Paul Mercury Insurance Company and Defendant-Appellee as to Evanston Insurance Company and Third-Party Plaintiff (Motive Parts Company of America, Inc., Defendant; Evanston Insurance Company, Defendant-Appellant; Marsh & McClennan, Inc., Third-Party Defendant).

First District (1st Division)   No. 85—1880

Opinion filed May 11, 1987.

Purcell & Wardrope, Chartered, of Chicago (Sandra Young and John T. Wardrope, of counsel), for appellant Evanston Insurance Company.

Donald J. O'Brien, Sr., of Chicago (Michael W. Rathsack, of counsel), for Statistical Tabulating Corp.

Librizzi & Dunn, of Chicago (Michael A. Dunn, of counsel), for appellee St. Paul Mercury Insurance Company.

JUSTICE CAMPBELL delivered the opinion of the court:

This appeal arises out of a complaint for declaratory judgment filed by the St. Paul Mercury Insurance Company against Statistical Tabulating Corporation (Stat-Tab), Motive Parts Company of America, Inc., and Evanston Insurance Company, seeking a judicial determination that: (1) the professional liability insurance policy issued by St. Paul to Stat-Tab did not cover a claim filed by Motive Parts in February 1983 against Stat-Tab for negligent performance of its services in June 1979; (2) St. Paul has no duty to defend Stat-Tab in the lawsuit filed by Motive Parts; (3) St. Paul has no duty to pay any judgment awarded to Motive Parts; and (4) the alleged errors committed by Stat-Tab are covered under a professional liability insurance policy issued to Stat-Tab by Evanston Insurance Company. The Evanston policy had commenced on January 1, 1979, and was renewed annually until January 1, 1983, on which date a professional liability policy with St. Paul became effective. The Evanston policy allowed for a $50,000 deductible; the St. Paul policy had a $7,500 deductible.

Both Evanston and St. Paul moved for summary judgment against Stat-Tab, each claiming that, as a matter of law, its respective policy did not cover the alleged errors, and Stat-Tab filed a cross-motion for summary judgment against St. Paul, alleging that it was insured under St. Paul's policy. The trial court granted St. Paul's motion for summary judgment and denied Evanston's motion for summary judgment. Thereafter, Stat-Tab moved for summary judgment against Evanston, alleging that Evanston's policy covered the claims, and Evanston moved for a rehearing on its motion for summary judgment. The trial court granted Stat-Tab's motion, finding that Stat-Tab was covered by the Evanston policy, and denied Evanston's motion for a rehearing. Evanston appeals the orders which: (1) denied its motion for summary judgment against Stat-Tab; (2) denied its motion for rehearing; and (3) granted summary judgment to Stat-Tab. Stat-Tab appeals from the denial of its motion for summary judgment against St. Paul. For the reasons that follow, we reverse the judgments of the trial court and remand the cause for a trial on the merits as to St. Paul's and Evanston's liability to defend and indemnify Stat-Tab with respect to the claim filed by Motive Parts.

The record sets forth the following. In February 1979, Stat-Tab,

a data processing services company, entered into an oral agreement with Motive Parts, a wholesaler and retailer of automotive parts, whereby Stat-Tab agreed to perform computer processing services for Motive Parts. Pursuant to the deposition of David Templin, president of Motive Parts, Motive Parts began experiencing problems with Stat-Tab's services from the beginning of their business relationship. In May and June 1979, the problems culminated in a series of alleged data processing errors which resulted in inaccurate billing to Motive Parts' customers. Templin stated that he had had several telephone conversations as well as a meeting with Stat-Tab regarding these errors. The first written communication between Stat-Tab and Motive Parts regarding the problem was a letter dated July 25, 1979, from Robert Hendrix, sales manager of Stat-Tab, to Templin, which referred to a recent meeting between Hendrix and Templin and offered to re-run Motive Parts' work at no cost and "to be of any assistance to ensure more positive results in July and the months ahead."

Subsequently, in a letter dated August 17, 1979, from Motive Parts to Stat-Tab, Templin purported to confirm admissions by Hendrix that Stat-Tab had "negligently failed to properly perform computer processing services for Motive Parts Company during the period beginning June 2, 1979 and ending June 20, 1979," and informed Stat-Tab that, as a result of the negligence, Motive Parts had suffered "considerable loss and expense," including customer goodwill. The letter concluded with the comment that although it had been in contact with its attorneys, Motive Parts assumed the problem could be resolved without having to resort to legal action.

Several months later, in a handwritten letter dated April 5, 1980, from Motive Parts to Stat-Tab, written in response to a bill collection letter, Motive Parts warned that the "next thing you [sic] company is going to hear from us is a sizeable lawsuit for Stat-Tab's careless actions almost putting us out of business." There was no further written correspondence with respect to Stat-Tab's alleged errors until a letter dated December 30, 1982, was sent from Motive Parts' law firm to Stat-Tab, outlining Stat-Tab's negligent performance and the resulting losses incurred by Motive Parts and demanding that Stat-Tab contact the law firm within 14 days to discuss the matter or a lawsuit would be initiated. Stat-Tab claims that it did not receive the letter until January 3, 1983, at which time it promptly forwarded it to its insurance broker, Marsh & McLennan, Inc., who, in turn, mailed it to St. Paul, whose policy period became effective on January 1, 1983.

In February 1983, Motive Parts filed its complaint against Stat-Tab, predicated on the June 1979 errors, seeking $635,000 in damages. Following preliminary discovery, St. Paul informed Stat-Tab in a reservation of rights letter that, pursuant to the prior errors provision of its policy, Stat-Tab was not covered by the St. Paul policy for the errors alleged by Motive Parts. The prior errors provision allows for coverage of claims based on errors that occurred before the effective date of the policy agreement, provided that, "neither you nor the protected person had knowledge of the prior error at the effective date of this agreement, nor any reasonable way to foresee that a claim may be brought; and there is no other insurance applying to the error." St. Paul contended that the August 17, 1979, letter was sufficient notice to Stat-Tab of a potential claim by Motive Parts.

Several months later, on July 19, 1983, St. Paul filed its declaratory judgment action against Stat-Tab, Motive Parts, and Evanston Insurance, seeking a determination that, pursuant to its prior errors provision, it had no duty to defend or to indemnify Stat-Tab in the Motive Parts lawsuit. As a result, Stat-Tab notified Evanston in a letter dated August 17, 1983, that it looked to Evanston for its defense and indemnification. Evanston responded by moving for summary judgment against Stat-Tab on the ground that Motive Parts' claim against Stat-Tab had not been made prior to the termination of the Evanston policy. St. Paul then moved for summary judgment against Evanston and Stat-Tab, followed by Stat-Tab's cross-motion for summary judgment against St. Paul.

Following a hearing on all of the motions on January 4, 1985, the trial court granted summary judgment in favor of St. Paul on the ground that the letter of August 17, 1979, was sufficient notice to Stat-Tab of a prior error, thereby barring coverage under the St. Paul policy pursuant to the prior errors provision. Further, the court denied Evanston's motion against Stat-Tab.

At a subsequent hearing on May 30, 1985, on Stat-Tab's motion for summary judgment against Evanston, Evanston argued that, predicated on the court's earlier finding that the August 17, 1979, letter was sufficient to put Stat-Tab on notice of a potential claim, Stat-Tab had fraudulently represented to Evanston at the time it applied for insurance in December 1981 that it knew of no incidents which might give rise to a professional liability claim. Based on this misrepresentation, Evanston argued that its policy with Stat-Tab was void as a matter of law. The court found that there had been no misrepresentation by Stat-Tab and granted Stat-Tab's motion for

summary judgment against Evanston. On appeal, Stat-Tab seeks reversal of the judgment entered in favor of St. Paul and a finding that it is entitled to a defense and coverage under the St. Paul policy. In addition, Evanston seeks a reversal of the trial court's ruling that it must provide a defense and coverage to Stat-Tab under its policy of insurance.

Preliminarily, this court notes that although both Stat-Tab and Evanston are appealing from summary judgments, neither argues the pivotal question for review by this court: whether there are genuine issues of material fact which preclude the entry of summary judgment. Instead, both parties argue substantive issues which go to the merits of the case. Accordingly, contrary to the issue statements raised in the briefs, we shall focus on whether there are genuine issues of material fact.

First, with respect to the St. Paul policy, we must determine whether an issue of fact exists as to whether on January 1, 1983, the effective date of St. Paul's policy, Stat-Tab had knowledge of prior errors in the services it supplied to Motive Parts which could reasonably be foreseen as potential grounds for a claim. If such knowledge existed at that time, pursuant to the prior errors provision in St. Paul's policy, coverage would not be provided.

In support of its position that Stat-Tab had knowledge of the prior errors on January 1, 1983, St. Paul relies on the written correspondence between Stat-Tab and Motive Parts, dated July 25, 1979, and August 17, 1979, which discussed problems Motive Parts was having with Stat-Tab's services. Specifically, the letter of August 17, 1979, confirmed an alleged admission of negligence made by Richard Hendrix, sales manager of Stat-Tab, and mentioned the possibility of a lawsuit if reimbursement was not made once Motive Parts' losses had been tabulated.

Stat-Tab acknowledged the 1979 correspondence between Motive Parts and Hendrix. However, it argued that Hendrix' knowledge could not be imputed to the corporation because Hendrix was merely a salesman and not a corporate officer. Stat-Tab offers no legal support for this conclusion. In contradiction to Stat-Tab's position, it is well established that business knowledge acquired by an agent in the natural scope of his employment is imputed to the principal. (*Campen v. Executive House Hotel, Inc.* (1982), 105 Ill. App. 3d 576, 434 N.E.2d 511.) In the present case, Stat-Tab admits that Hendrix was the salesman who serviced the Motive Parts account and that Hendrix had received the correspondence from Motive Parts regarding the 1979 error during the scope of his employment

as sales manager. Based on these facts, we find that Hendrix' knowledge of the 1979 error is properly imputed to Stat-Tab as a matter of law. Further, we concur with the trial court that the 1979 correspondence was sufficient to put Stat-Tab on notice that prior errors had occurred which might give rise to a lawsuit. However, while we agree that in 1979 it was reasonably foreseeable that Motive Parts would file a lawsuit against Stat-Tab for the June 1979 errors, we also recognize that that foreseeability may have been diminished by the intervening time period between the last correspondence between the parties in April 1980 and the filing of the complaint in February 1983. In our view, whether that period of silence lulled Stat-Tab into a false assurance that there were no prior errors which would give rise to a potential claim, thereby acting as a waiver of prior knowledge of potential claims, is a genuine issue of material fact which precludes entry of a summary judgment. See *Vandevier v. Mulay Plastics, Inc.* (1985), 135 Ill. App. 3d 787, 482 N.E.2d 377.

With respect to the Evanston policy, we must determine whether there is a genuine issue of material fact as to: (1) whether Motive Parts' claim was "first made" during Evanston's policy period; and (2) whether Stat-Tab violated its condition precedent to coverage by failing to give notice of Motive Parts' claim "as soon as practicable."

Evanston contends that the policy it issued to Stat-Tab was a "claims made" policy which, according to its own terms, provides coverage only if a claim has been first made against the insured during the life of the policy. The Evanston policy defines "claim" as "a demand received by the Insured for compensation for damages, including the service of suit or institution of arbitration proceedings against the Insured." Evanston asserts that because the demand letter from Motive Parts, dated December 30, 1982, was not received by Stat-Tab until January 3, 1983, after the Evanston policy had expired, the claim is not covered.

Stat-Tab responds that the question of receipt is not governed by when the letter was opened and that the fact the letter was mailed on Thursday, December 30, 1982, to a nearby destination raises the presumption that it was received the next day. (*Winkfield v. American Continental Insurance Co.* (1969), 110 Ill. App. 2d 156, 249 N.E.2d 174; *Dubuque Fire & Marine Insurance Co. v. Oster* (1897), 74 Ill. App. 139.) In *Winkfield*, the court held that the mailing of a properly stamped and addressed letter raises a presumption that the letter was received by the addressee. If the addressee de-

nies receipt, the presumption is rebutted and the question is one for the trier of fact. Similarly, in *Dubuque Fire & Marine Insurance Co.*, the court noted that because the place from where the letter was mailed and the letter's destination were such a short distance apart, a presumption arose that the letter would be received the following day. In the present case, the correspondence indicates that the office of Motive Parts' attorneys from where the December 30 letter was sent and Stat-Tab's offices were within one mile of each other. Thus, Stat-Tab argues the presumption exists that the December 30 letter arrived at Stat-Tab's post office box the following day, which was within the Evanston policy period.

Stat-Tab further argues that pursuant to section 1.11 of "An Act to revise the law in relation to the construction of the statutes" (Ill. Rev. Stat. 1985, ch. 1, par. 1012), and judicial constructions thereof, the December 30, 1982, letter was timely received by Evanston within the policy period. Section 1.11 provides that:

> "The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday as defined or fixed in any statute now or hereafter in force in this State, and then it shall also be excluded. If the day succeeding such Saturday, Sunday or holiday is also a holiday or a Saturday or Sunday then such succeeding day shall also be excluded."

As a matter of practical application, the statute has been judicially construed to include any day on which an office is closed, regardless of whether it is a Saturday, Sunday, or legal holiday. (*Pettigrove v. Parro Construction Corp.* (1963), 44 Ill. App. 2d 421, 194 N.E.2d 521.) In the present case, the December 30 letter was mailed on a Thursday. Stat-Tab's offices were closed on Friday, December 31, on Saturday, January 1, and on Sunday, January 2. Therefore, Stat-Tab argues that those three days must be excluded from the period in which the December 30, 1982, letter had to be received, and the final day of the policy period for the purpose of receiving claims should be extended to Monday, January 3, the first working day after December 30.

In response, Evanston argues that Stat-Tab's legal arguments have no application to the facts at bar. First, Evanston contends that there is no evidence in the record that Stat-Tab had a post office box. Rather, there is only testimony that Stat-Tab picked up its mail at the post office. Evanston claims that delivery to a post office does not constitute receipt by Stat-Tab. Second, Evanston con-

tends that the common law presumption as to mail delivery is raised only if the party to whom the letter is mailed denies having received it. In our case, Stat-Tab admits to having received the December 30 letter, but claims that receipt did not occur until January 3. Finally, Evanston argues that section 1.11 does not apply to insurance contracts which set forth the policy period in unambiguous terms. (*Nabor v. Occidental Life Insurance Co.* (1979), 78 Ill. App. 3d 288, 396 N.E.2d 1267.) The Evanston policy defines the policy period as "From January 1, 1982 to January 1, 1983 - 12:01 A.M. Standard Time at address of insured stated above."

■ In our view, the pivotal question is what constitutes receipt of the December 30 letter. If receipt occurred when the letter was delivered to the post office where it is the common practice for Stat-Tab to pick up its mail, the presumption is that receipt was effectuated on December 30, 1982. On the other hand, if receipt did not occur until Stat-Tab actually had physical possession of the letter, then receipt did not occur until January 3, 1983, after the Evanston policy had expired. Because this question remains unresolved, we find that the trial court erred in granting summary judgment in favor of Stat-Tab and against Evanston.

■ In reaching this conclusion, we concur with Evanston that pursuant to *Nabor v. Occidental Life Insurance Co.* (1979), 78 Ill. App. 3d 288, 396 N.E.2d 1267, section 1.11 is inapplicable to our facts. In *Nabor*, on September 15, 1975, the insurer issued an annual renewable level term life insurance policy on the life of the insured. The insured died from alleged suicide on September 15, 1977, the second anniversary date of the policy. Pursuant to the terms of the policy, the policy was incontestable after it was in force during the lifetime of the insured for two years from its date of issue. Further, if the insured died from suicide within two years from the date of issue of the policy, the insurer's liability was limited to the amount of the premiums paid. The insurer, relying on section 1.11, claimed that the policy did not expire until September 15, 1977. Thus, the insured committed suicide within the first two years of the policy. Recognizing that section 1.11 is not binding and applicable in all situations (*Soucie ex rel. Ziems v. Illinois Agricultural Mutual Insurance Co.* (1944), 323 Ill. App. 456, 56 N.E.2d 55), the *Nabor* court held that by construing the policy as a whole, and applying the clear and express language of the provisions which referred to the policy date, it was clear that "the policy year was not to be computed according to the general rule set forth in the Illinois statute but as including the first day."

In the present case, the Evanston policy also contained clear and express language as to the duration of the policy period: Stat-Tab would be insured for one full year commencing at 12:01 a.m. on January 1, 1982, and ending at 12:01 a.m. on January 1, 1983. It is well accepted that the parties to an insurance contract are at liberty to make any stipulations they choose provided that they are not against public policy or a positive rule of law. (*People ex rel. Blachly v. Coffin* (1917), 279 Ill. 401, 117 N.E. 85, *overruled on other grounds People v. Burdett* (1918), 283 Ill. 124, 118 N.E. 1009.) Based upon the unambiguous definition of the policy period in the Evanston policy, we conclude as a matter of law that section 1.11 is inapplicable.

Next, with respect to Evanston's contention that Stat-Tab violated its condition precedent to coverage by not giving notice of the claim "as soon as practicable," we concur with the trial court that notice to Evanston within four months of receiving St. Paul's reservation of rights letter constituted notice made "as soon as practicable," and did not violate the condition precedent to coverage. *McFarlane v. Merit Insurance Co.* (1978), 58 Ill. App. 3d 616, 374 N.E.2d 951.

Finally, we decline to address Evanston's contention that Stat-Tab's misrepresentation on its application for insurance acted to void the policy as a matter of law. On its application for insurance, dated December 11, 1981, Stat-Tab allegedly indicated that there were no known incidents which might give rise to a professional liability claim. Evanston argues that this statement constituted a material misrepresentation because the letters of August 17, 1979, and April 5, 1980, "were sufficient to put any reasonable person on notice that a claim could be expected to follow." Our earlier decision that there remains a question of fact as to whether Motive Parts' period of noncommunication with Stat-Tab constituted a waiver by Motive Parts of any foreseeable claims precludes us from reaching a determination on this issue.

For the aforementioned reasons, we reverse the judgments of the trial court and remand the cause for a trial on the merits in accordance with the views expressed herein.

Reversed and remanded.

QUINLAN, P.J., and O'CONNOR, J. concur.