FARRIS BRYANT, a Minor, by his Next Friend Diana Bryant, *et al.*, Plaintiffs-Appellees, v. MARK LIVIGNI, Defendant (National Super Markets, Inc., Defendant-Appellant).

Fifth District   No. 5—92—0141

Opinion filed September 1, 1993.—Rehearing denied September 29, 1993.

WELCH, J., concurring in part and dissenting in part.

John D. Warner, Jr., of Kortenhof & Ely, of St. Louis, Missouri, for appellant.

John Long and Greg Weber, both of Troy, for appellees.

JUSTICE MAAG delivered the opinion of the court:

## FACTS

In 1970, Mark Livigni was a 16-year-old high school student. He was hired by National Super Markets, Inc., as a bagger and continued to work for National after graduating from high school. Livigni worked himself up to a management position, and in 1985 he was made manager of the National store in Cahokia. Livigni was evaluated on a regular basis by National with respect to his ability to relate

to customers and employees. The record reflects that he always received good evaluations while employed at National.

On March 18, 1987, while off duty, Livigni stopped by the Cahokia National store. As manager, he was authorized to check and supervise the operation of the store even during off-duty hours. He was intoxicated at the time of this visit, which was a violation of National rules. Livigni observed a young man urinating on the store wall outside the east exit doors. He hollered at the young man and followed the fleeing youth to the parked vehicle of Diana Bryant.

Livigni pulled four-year-old Farris Bryant from the automobile. Farris, however, was not the boy who had been urinating. The boy Livigni had followed was Donya Jackson, age 10, who was also in the back seat of the Bryant automobile. Livigni shouted racial epithets and profanity at Diana Bryant and the children, and he attacked four-year-old Farris, throwing the child through the air.

Farris was taken to Centreville Township Hospital's emergency room for medical treatment. Farris was admitted to the hospital and was released after four days. He was released from all medical treatment approximately one month after the battery.

In a multicount complaint, Farris Bryant and Diana Bryant sued both Livigni and his employer, National. Mark Livigni was accused of committing battery and invasion of privacy. National was alleged to be liable based upon theories of *respondeat superior* (for Livigni's actions), negligent retention of Livigni as an employee, and willful and wanton retention of Livigni as an employee.

At trial, Livigni's supervisor testified that during Livigni's 17-year tenure with National, Livigni had been a good employee. This supervisor never received any reports from customers or employees that Livigni had "violent-related" problems, although he was aware of a report that Livigni threw an empty milk crate which struck a coworker.

Evidence was offered of two batteries committed by Livigni prior to his attack of Farris. In 1980, Livigni had a disagreement with a subordinate employee resulting in Livigni throwing an empty milk crate at the employee, striking him on the arm and necessitating medical treatment. At the time of this battery, Livigni was an assistant store manager. A workers' compensation claim was filed against National by the injured employee. A short time after the workers' compensation claim was resolved, Livigni was promoted to store manager by National in spite of this incident.

The second battery occurred in 1985 when Livigni, while disciplining his 13-year-old son, threw the boy into a bed causing the boy to

sustain a broken collar bone. In June 1986 Livigni pleaded guilty to aggravated battery to a child and was sentenced to two years' probation. He was still on probation at the time he attacked Farris.

Livigni testified at trial that he had not told any of his supervisors at National about the battery of his son. He admitted to telling employees of equal or lesser positions than himself about the battery. He considered these people to be his friends.

Plaintiffs sought to prove that Livigni's district manager and supervisor, Ben Rodell, was aware of Livigni's battery of his son by presenting the testimony of Gary Kapecchi, a former National employee. Kapecchi testified, over a hearsay objection, that he had discussed Livigni with Carl Oller, the man who replaced Livigni as the Cahokia store manager after Livigni was fired. Kapecchi testified that after the Bryant battery, Oller related to Kapecchi a prior conversation Oller had with Livigni and Rodell. This conversation concerned Livigni's battery of his son and how the incident had been blown out of proportion. Kapecchi testified that the conversation took place prior to March 18, 1987. Thus, it would have predated the Farris Bryant attack and shown that Livigni's supervisor had notice of the incident involving Livigni's son. Oller, Rodell, and Livigni all denied that any such conversation took place.

At the close of the evidence, the following counts were submitted to the jury for consideration and the following verdicts were returned.

### VERDICTS*

| | Plaintiff | Defendant | Theory of recovery | Type of damages sought | Prevailing party and verdict |
|---|---|---|---|---|---|
| Count I | Farris | Livigni | Battery | Compensatory | Plaintiff—$20,000 |
| Count II | Farris | Livigni | Battery | Punitive | Plaintiff—$0 |
| Count III | Farris | National | Battery (*respondeat superior*) | Compensatory | Plaintiff—$20,000 |
| Count IV | Farris | National | Battery (*respondeat superior*) | Punitive | Plaintiff—$0 |

| Count V | Farris | National | Negligent Retention | Compensatory | Plaintiff—$15,000 |
|---|---|---|---|---|---|
| Count VI | Farris | National | Willful & Wanton Retention | Punitive | Plaintiff—$115,000 |
| Count VII | Diana | Livigni | Invasion of Privacy | Compensatory | Plaintiff—$2,000 |
| Count VIII | Diana | National | Invasion of Privacy (*respondeat superior*) | Compensatory | Plaintiff—$2,000 |
| Count IX | Diana | National | Invasion of Privacy/ Negligent Retention | Compensatory | Plaintiff—$8,000 |

*The numbering of the counts on the verdict forms differed from the numbering in the complaint. The numbers indicated in the chart are those used on the verdict forms.

Judgment was entered for Farris Bryant in the sum of $20,000 for compensatory damages and $115,000 in punitive damages. Judgment was entered for Diana Bryant in the sum of $8,000 for compensatory damages.

National's post-trial motion was denied, and this appeal ensued. Mark Livigni is not a party to this appeal.

## I

National first contends that the trial court erred in denying its motion for a directed verdict and further erred in refusing to grant its motion for a judgment notwithstanding verdict on the claims of both Farris and Diana Bryant (counts V and IX) which alleged National was negligent in retaining Mark Livigni as an employee. This allegation of error is premised on the proposition that insufficient evidence was presented to show that National knew or should have known that Livigni was not fit to serve as a store manager. National also argues that there was no showing that its retention of Livigni was a proximate cause of the plaintiff's injuries.

In considering this issue, we must remain cognizant of the relief sought by National. National is not seeking a new trial. Rather, the only relief requested is a judgment notwithstanding the verdict. The standard of review in such a case is that set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14:

"[V]erdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

■ According to National, there was no evidence that it knew or had reason to know that Livigni was anything other than "an excellent store manager, fit for his position." To support this argument, National claims that there was conflicting evidence regarding the 1980 incident where Livigni threw a milk crate at a co-worker causing injury. It argues that the 1980 incident was of uncertain origin since differing versions of the incident and its cause were presented in the evidence. It asserts that due to this conflicting evidence the incident could not form the basis for a negligent retention claim.

We find this argument to be unpersuasive. Under the *Pedrick* standard, we must refrain from resolving conflicts in the testimony. That is the function of the jury. Our charge is to view the evidence in the light most favorable to the party which prevailed below. In doing so, we believe that the evidence regarding this incident was sufficient to present an issue for the jury to resolve on the question of whether National was negligent in retaining Livigni in its employ.

Rather than disciplining Livigni after he injured a subordinate employee in an unprovoked attack, National promoted him following the resolution of the injured employee's workers' compensation claim.

National further argues that it had no knowledge of the incident involving Livigni's son that resulted in Livigni's felony conviction for aggravated battery of a child. Relying upon *Campen v. Executive House Hotel, Inc.* (1982), 105 Ill. App. 3d 576, 434 N.E.2d 511, National points to the general rule which states that to impute knowledge of this occurrence to National a showing was required that an agent or employee of National had notice or knowledge of the incident and that the knowledge concerned a matter within the scope of the agent's authority. According to National, evidence of such knowledge was lacking.

This claimed ignorance of the facts is premised upon several different bases. Each will be considered in order.

National first admits that Livigni told employees of equal or lesser rank within the corporation about the battery involving his son. However, it claims that this is insufficient notice to the corporation. It argues that the people Livigni told were his "friends" and that as mere "co-workers" of equal or subordinate position no notice could legally be imputed to National. We disagree.

The issue is not whether these persons were Livigni's friends. The law does not recognize a "friendship privilege." Being his friends did not diminish the duty of loyalty owed to the corporation (Restatement (Second) of Agency §39, at 130 (1958)), nor did this friendship relieve them of the duty to act in the best interest of the corporation. The duty is clearly set forth in comment *a* to section 39 of the Restatement as follows:

> "Authority is conferred to carry out the purposes of the principal and not those of someone else. These purposes, as manifested to the agent, constitute the benefit for which, as the agent should realize, the agency is created. In business enterprises, an agent normally has no authority *** to conduct his principal's business with a mind to the benefit of others." Restatement (Second) of Agency §39, Comment *a*, at 130 (1958).

The friendship enjoyed by Livigni and his co-workers does not constitute a reason to ignore the information admittedly learned by these co-workers, nor does it constitute a reason to forego imputing this information to National.

Assuming for the sake of discussion that no National employees in a position to supervise Livigni knew he had battered his son, we believe that the knowledge admittedly held by the co-workers must still be imputed to National. *St. Paul Mercury Insurance Co. v. Statistical Tabulating Corp.* (1987), 155 Ill. App. 3d 545, 550, 508 N.E.2d 433, 436.

There is no rule which requires this knowledge held by co-workers to be disregarded unless the co-worker possessing the knowledge "outranks" the employee in question. To the contrary, whether the agent obtaining the knowledge is in a subordinate or a superior position in the corporation, that knowledge is still chargeable to the corporation if the information concerns a matter within the scope of the agent's authority. *St. Paul Mercury Insurance Co.*, 155 Ill. App. 3d at 550, 508 N.E.2d at 436.

In this case, the defendant tendered, as its instruction No. 2, IPI Civil 2d No. 50.06 (Illinois Pattern Jury Instructions, Civil, No. 50.06 (2d ed. 1971)), and it was given by the court. The instruction explained to the jury the concept of agency and what was required for

the jury to conclude that a matter was within the scope of an agent's authority. Viewing the evidence in the light most favorable to the plaintiff (*Pedrick*, 37 Ill. 2d 494, 229 N.E.2d 504), we believe that a reasonable jury could have concluded that the information concerning the battery of Livigni's son, learned by these co-workers, was within the scope of their authority to act upon. Whether reported to higher authorities or not, the information still constitutes "corporate knowledge." (*Campen*, 105 Ill. App. 3d at 586, 434 N.E.2d at 517.) In such a case, their knowledge is chargeable to National.

National claims that evidence that Livigni's supervisor was aware of this incident involving his son was improperly admitted. It claims this evidence was hearsay, should not have been admitted over its objection, and as such could not constitute notice of the incident.

Specifically, National complains that a former National employee, Gary Kapecchi, was allowed to testify over its hearsay objection about a conversation he had with Carl Oller, a National store manager. According to Kapecchi, Oller told him that before the incident involving Farris Bryant, National management knew of the incident involving Livigni's son. Kapecchi stated that Oller told him of a meeting attended by Oller, Livigni, and Ben Rodell, Livigni's supervisor. At this meeting, there was allegedly a discussion about the incident involving Livigni's son.

This objection has been waived. National has not requested a new trial. It has requested a judgment *n.o.v.*, an outright reversal. In such a case, error in the admission or rejection of evidence is not preserved for review. (*Chiribes v. Bjorvik* (1968), 100 Ill. App. 2d 150, 241 N.E.2d 626; *Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 171 N.E.2d 60.) Despite this waiver, we believe that any error in the admission of this evidence was at most cumulative and harmless. Our previous discussion demonstrates that knowledge of this incident is imputable to National through the knowledge of other employees.

Finally, we have considered the claim that National's retention of Livigni in its employ was not a proximate cause of the plaintiff's injuries. In its brief, National devotes only two sentences to this allegation and never states why it believes proof of proximate cause is lacking. The issue is waived. Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)).

We conclude that the circuit court did not err in denying National's motion for a directed verdict, nor did it err in refusing to grant a judgment *n.o.v.* on plaintiff's claim of negligent retention. Viewing the evidence in the light most favorable to the plaintiff, we cannot

state that the evidence so overwhelmingly favored National that this verdict cannot stand.

## II

National next claims that the circuit court should have directed a verdict in its favor or granted a judgment *n.o.v.* on the plaintiff's punitive damages claim. This count alleged that National's retention of Mark Livigni as a management employee constituted willful and wanton misconduct (count VI).

■ National reiterates its claim that there was insufficient evidence to prove negligence. It, therefore, states that if the evidence was insufficient to prove simple negligence, then as a matter of law the evidence must be insufficient to prove willful and wanton misconduct. It relies upon *In re Application of Busse* (1984), 124 Ill. App. 3d 433, 464 N.E.2d 651, as authority for this argument. As an abstract principle of law, we agree that if the evidence was insufficient to prove negligence it must necessarily also be insufficient to prove willful and wanton misconduct. However, we have already found that sufficient evidence was presented to create a jury issue on the negligent-retention claim. The jury resolved that issue against National. Now we must decide whether sufficient evidence was presented to support the punitive damages award.

The Restatement (Second) of Torts, section 909, at 467 (1979) provides:

"Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,

\*\*\*

(b) the agent was unfit and the principal or a managerial agent was reckless in \*\*\* retaining him."

This count did not seek to impose liability upon the defendant vicariously. Rather, the plaintiff's cause of action alleged wrongful conduct on the part of National itself. Section 909(b) of the Restatement (Second) of Torts speaks directly to the issue under discussion. So too does the case of *Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920, 387 N.E.2d 1241.

*Easley* recognized that it is settled law that a cause of action exists in Illinois for negligent hiring of an employee, and that if the defendant's conduct could properly be characterized as willful and wanton then punitive damages are recoverable. (*Easley*, 69 Ill. App. 3d at 931, 387 N.E.2d at 1248.) We see little difference between a punitive damages claim for willfully and wantonly hiring an employee in the first instance and a claim for willfully and wantonly retaining an

unfit employee after hiring. In both instances, the interest to be protected is the same. Employers that wrongfully (whether negligently or willfully and wantonly) hire or retain unfit employees expose the public to the acts of these employees. In such cases it is not unreasonable to hold the employer accountable when the employee causes injury or damage to another. The principle at issue is not *respondeat superior*, although that may also be implicated. Rather, the cause of action is premised upon the wrongful conduct of the employer itself. (*Easley*, 69 Ill. App. 3d at 931, 387 N.E.2d at 1248.) For this reason, the cause of action is distinguishable from the situation in *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 330 N.E.2d 509, where the plaintiff sought to hold the employer responsible for an employee's acts based upon principles of vicarious liability.

Punitive damages are not awarded as compensation. They serve the purpose of punishing the offender and deterring others from committing like conduct. (*Loitz v. Remington Arms Co.* (1990), 138 Ill. 2d 404, 563 N.E.2d 397.)

> "It has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359.

Citing *Kritzen v. Flender Corp.* (1992), 226 Ill. App. 3d 541, 589 N.E.2d 909, National argues that punitive damages require proof beyond that necessary for the basic action. We agree that proof of misconduct more egregious than simple negligence is required. Nevertheless, a party may plead in alternative counts that certain conduct constitutes either negligence or willful and wanton misconduct. (*Alley v. Champion* (1979), 75 Ill. App. 3d 878, 394 N.E.2d 735.) The question then becomes one for the jury to determine, whether the conduct amounted to simple negligence or rose to the level of willful and wanton misconduct. *Giers v. Anten* (1978), 68 Ill. App. 3d 535, 386 N.E.2d 82.

Because the cause of action pleaded in count VI was not based upon *respondeat superior*, there was no need to demonstrate that the wrongfully retained employee was in a managerial position. (*Cf. Kemner v. Monsanto Co.* (1991), 217 Ill. App. 3d 188, 576 N.E.2d 1146 (dealing with punitive-damage claims based upon *respondeat superior*).) Rather, the focus of the inquiry was on whether the employer committed willful and wanton misconduct by retaining the unfit em-

ployee in the service of the business. In other words, the position of those persons with the power to make decisions regarding the employment status of the unfit employee must be examined, not the position occupied by the person alleged to be unfit.

This does not mean that the position in the corporate chain of command of the unfit employee is irrelevant. An unfit supervisor is frequently in a position to do more harm than a lower-level employee. Also, as the authority of the unfit employee increases, the likelihood that his acts will be deemed corporate policy increases. There is a distinct qualitative difference between acts committed by a corporate official with authority to set policy and acts committed by an employee with no management authority. (*Kemner*, 217 Ill. App. 3d 188, 576 N.E.2d 1146.) But, given proper circumstances, an employee with little or no authority, who was wrongfully retained, could cause an employer to be subjected to a punitive award if the employer was willful and wanton in its retention of the employee.

The jury heard evidence that Livigni attacked a fellow employee in 1980 and was then promoted. He injured his own son, he was convicted of aggravated battery in a criminal proceeding, and members of National's management admittedly knew of that incident. National took no action. Then while a store manager, in an intoxicated state, he attacked a four-year-old child and threw him through the air, resulting in his hospitalization. National itself characterizes this attack on young Farris as outrageous. We cannot say the jury was unjustified in concluding the same and also concluding that retaining this man as a managerial employee constituted willful and wanton misconduct.

Since a motion for judgment notwithstanding the verdict presents only a question of law, it will be granted only if there is a total failure to prove any essential element of the plaintiff's case. (*Baier v. Bostitch* (1993), 243 Ill. App. 3d 195, 202, 611 N.E.2d 1103, 1108.) Under *Pedrick*, we must view the evidence in this case in the light most favorable to the plaintiff. There is no claim that the jury did not receive proper instruction, and given this standard of review, we cannot say that there was a total failure of proof on any element, nor can we say that the evidence so overwhelmed favored the defendant that the verdict cannot stand. There was sufficient credible evidence presented to lead the jury to render the verdict that it did. We will not disturb that determination. The circuit court did not err in refusing to grant a directed verdict, nor did it err in refusing to grant a judgment *n.o.v.* on plaintiff's punitive damages claim (count VI).

## III

Finally, National asks that a judgment *n.o.v.* be entered in its favor on the plaintiffs' *respondeat superior* claims (counts III and VIII). National argues in its brief:

"Mark Livigni's conduct on March 18, 1987, in arriving at the store in an intoxicated state, contrary to known store policy, shouting racial epithets at a customer and her young children, and throwing and attacking an innocent four-year-old child, was unexpectable and outrageous and thus did not come within the scope of Livigni's employment."

■ We agree with National that the conduct was outrageous. We disagree that this precludes a judgment against National based upon principles of *respondeat superior*.

National appears to argue that because the conduct was reprehensible that it should be insulated from liability. Relying upon section 245 of the Restatement (Second) of Agency (Restatement (Second) of Agency §245, at 537 (1958)), and *Harrington v. Chicago Sun-Times* (1986), 150 Ill. App. 3d 797, 502 N.E.2d 332, which cites section 245 with approval, National argues that we should find that Livigni's conduct was "unexpectable" in view of his duties.

Plaintiff cites the case of *Metzler v. Layton* (1939), 373 Ill. 88, 25 N.E.2d 60, in opposition. In *Metzler*, an employer was found to be responsible based upon *respondeat superior* principles for the act of an office manager who mistakenly shot an innocent bystander after a robbery. The court quoted with approval the following language from a Texas decision:

" 'The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business, or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances in the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on a third person.' " *Metzler*, 373 Ill. at 91-92, 25 N.E.2d at 61, quoting *Central Motor Co. v. Gallo* (Tex. Civ. App. 1936), 94 S.W.2d 821, 822.

We believe that the foregoing language is fully applicable to this case.

We also believe that the *Harrington* case relied on by National is distinguishable. National contends in its brief that *Harrington* involved a shooting by a newspaper delivery man of a person suspected

of stealing newspapers. However, contrary to the claims of National, in *Harrington* the delivery man specifically *denied* suspecting the victim of stealing newspapers. (*Harrington*, 150 Ill. App. 3d at 800-02, 502 N.E.2d at 334-35.) Under these circumstances, it would be difficult to claim that the delivery man was trying to further the employer's interest or protect the employer's property.

Moreover, we believe that the criteria for imposition of liability suggested by section 245 of the Restatement (Second) of Agency have been satisfied. Given the evidence of Livigni's prior acts that preceded the Farris Bryant attack, it was not "unexpectable" that an incident of violence might take place.

In order to impose liability upon National, it was not necessary that Livigni be motivated *solely* by a desire to further National's interest. It is sufficient if his actions were prompted only *in part* by a purpose to protect store property or further the employer's business. (*Wilson v. Clark Oil & Refining Corp.* (1985), 134 Ill. App. 3d 1084, 1089, 481 N.E.2d 840, 843.) The evidence was sufficient to justify such a conclusion by the jury.

Finally, the actions of Livigni in attacking Farris were committed within the constraints of the authorized time and location of his employment, thus bolstering a finding that the battery occurred within the course and scope of his employment. *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 493, 422 N.E.2d 925, 930.

Accordingly, we conclude that while the actions of Livigni were obviously not the normal actions of a store manager, we cannot say the jury was unjustified in concluding that Livigni was acting within the course and scope of his employment at the time of the Farris Bryant incident.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

CHAPMAN, P.J., concurs.

JUSTICE WELCH, concurring in part and dissenting in part:

I concur with the majority's opinion with respect to, and would affirm the judgment of the circuit court on the jury verdict against National Food Stores on, the *respondeat superior* counts of plaintiffs' complaint. With respect to the majority's opinion concerning the judg-

ment against National on the negligent and wilful and wanton retention counts of plaintiffs' complaint, however, I must respectfully dissent.

A cause of action for negligent hiring or retention must establish that a "particular unfitness" of an applicant or employee creates a danger of harm to third parties of which the employer knew, or should have known, when he hired, placed, or continued the person in employment where he could injure others. (*Huber v. Seaton* (1989), 186 Ill. App. 3d 503, 508, 542 N.E.2d 464, 467.) Under plaintiffs' complaint alleging wilful and wanton retention, plaintiffs were further required to show a deliberate intention to harm or an utter indifference to or conscious disregard for the safety of others in the retention of defendant Livigni as an employee. (*Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 336, 443 N.E.2d 1162, 1165.) In the instant case plaintiffs failed to establish by the two incidents occurring, respectively, two and seven years earlier that defendant Livigni had a violent propensity that could manifest itself in Livigni's dealings with those persons in the zone of foreseeable risk created by Livigni's employment.

As the majority notes, Livigni had been employed at National for 17 years at the time of the incident and was a good employee; National had never received any reports from customers or employees that Livigni had any violence-related problems. The 1980 incident in which a subordinate employee was struck by an empty milk crate thrown by Livigni and the 1985 incident in which he injured his 13-year-old son while disciplining him involved persons over whom Livigni was trying to assert authority, not the general public. As such, National was not put on notice by these two incidents that Livigni's continued employment created a danger of harm to the store customers or others with whom Livigni, as store manager, would have come in contact. In order to prove the negligent and the wilful and wanton retention counts of the complaint to the jury, plaintiffs were required to establish a causal relationship between the particular unfitness and the negligent act of the agent. (*Huber*, 186 Ill. App. 3d at 508, 542 N.E.2d at 467.) In my opinion, plaintiffs failed to show a connection between the nature of Livigni's prior acts of violence and the conduct of Livigni towards the plaintiffs in the instant case.

From a practical standpoint, the majority's opinion sends a message to all employers that in order to insulate themselves from liability for negligent or wilful and wanton retention any employee who has ever had an altercation on or off the workplace premises must be fired. Moreover, the majority opinion places an unreasonable investigative burden upon the employer by forcing the employer to discover,

retain, and analyze the criminal records of its employees. Is not the majority's opinion then at cross-purposes with the established public policy and laws of Illinois protecting the privacy of citizens and promoting the education and rehabilitation of criminal offenders? See Ill. Rev. Stat. 1991, ch. 68, par. 2—103 (making it a civil rights violation to ask a job applicant about an arrest record); see also Ill. Rev. Stat. 1991, ch. 38, par. 1003—12—1 *et seq.* (concerning correctional employment programs whose function is to teach marketable skills and work habits and responsibility to Illinois prisoners).

I would have granted defendant National Food Stores' motion for judgment *non obstante veredicto* on the negligent retention count of plaintiffs' complaint, because "no contrary verdict based on that evidence could ever stand" (*Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 514), in that plaintiffs failed to sustain their burden of proof. Similarly, since the theory of negligence was not proved, plaintiffs also failed to prove that the alleged conduct or omission showed a deliberate intention to harm or an utter indifference or conscious disregard for the safety of others. Accordingly, I would have also granted defendant National's motion for judgment *non obstante veredicto* on the wilful and wanton retention count of plaintiffs' complaint.