# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-1666

JASON COPELAND,

Plaintiff-Appellee,

v.

COUNTY OF MACON, ILLINOIS,
and OFFICE OF THE SHERIFF
OF MACON COUNTY, ILLINOIS,

Defendants-Appellants.

———————

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 C 2016—**Harold A. Baker**, *Judge.*

———————

ARGUED SEPTEMBER 27, 2004—DECIDED APRIL 13, 2005

———————

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* While Jason Copeland ("Copeland") was being held as a pre-trial detainee, he was severely beaten by other detainees at the behest of Darren Gregory ("Gregory"), a correctional officer at the Macon County Jail. Copeland then sued Gregory and received a $400,000 jury verdict against Gregory for his part in recruiting and encouraging other inmates in the jail to

brutally attack and beat Copeland. Copeland then sued the County of Macon and the Office of the Sheriff of Macon County (the "County") for indemnification. In granting Copeland's motion for summary judgment, the district court found that Gregory was acting within the scope of his employment because the citizens of Macon County, as opposed to the Macon County Jail, were actually Gregory's employer. We disagree and find that Gregory's conduct in orchestrating the attack of a pre-trial detainee was not the type of conduct that he was authorized to perform nor was his conduct actuated by a purpose to serve his employer. We, therefore, reverse the decision of the district court.

## I. BACKGROUND

Copeland was a pre-trial detainee at the Macon County Jail charged with attempted first-degree murder and aggravated battery of a child in connection with injuries to his infant son. At the time, Gregory was a correctional officer for the Office of the Sheriff of Macon County and was working as a correctional officer at the Macon County Jail.

Before Copeland arrived at the jail, Gregory informed one of the inmates in his assigned area that Copeland, who had been charged with shaking his infant son, was being brought into the jail and was assigned to Gregory's area. While talking to the inmate about Copeland, Gregory sarcastically referred to Copeland as a "real winner" and asked "[h]ow could somebody do that to a baby?" In response, the inmate asked Gregory if Gregory wanted him to stomp or physically assault Copeland. Gregory responded affirmatively, stating "That's the plan." The inmate then told Gregory that he intended to recruit other inmates to help carry out the attack on Copeland. Finally, Gregory and the inmate agreed that Gregory would open the doors to the cells and turn his back to allow the inmates to attack Copeland.

At approximately 10:10 P.M. on the evening of September 21, Gregory opened the cell doors as planned. Once the doors were open, Gregory intentionally turned his back, allowing the inmates to attack and beat Copeland until Copeland became unresponsive. As a result of the beating, Copeland suffered severe injuries, including a fractured eye socket and numerous cuts and abrasions.

The Office of the State's Attorney for Macon County brought criminal charges against Gregory for his participation in the attack. On February 23, 2001, Gregory pled guilty to a charge of official misconduct.

On January 15, 2002, Copeland filed a civil lawsuit against Gregory, claiming that Gregory violated Copeland's civil rights when he initiated and organized the attack on Copeland. On January 21, 2003, a jury returned a verdict for Copeland and awarded Copeland $400,000 in damages. Copeland then brought suit against Macon County and the Office of the Sheriff of Macon County for indemnification under 745 Ill. Comp. Stat. 10/9-102 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act.

On Copeland's motion for summary judgment, the district court ruled in Copeland's favor, finding that Gregory's conduct in arranging the severe beating of a pre-trial detainee was motivated by an intent to prevent and punish child abusers. Dist. Court Order, Mar. 10, 2004 at 4. Specifically, the court found that Gregory was not employed by the Macon County Jail but rather "the County—and ultimately the citizens of the County—employ Gregory"; therefore, Gregory was acting with the intent to serve his master when he initiated and facilitated the attack on Copeland. *Id.* As a result, the court found that Gregory acted within the scope of his employment at the time of the attack because Gregory acted with the intent to prevent and punish child abuse, which is a purpose that Gregory shared with the citizens of Macon County.

## II. ANALYSIS

We review the district court's grant of summary judgment *de novo*. *Smith v. Dunn*, 368 F.3d 705, 708 (7th Cir. 2004). The district court erred when it granted summary judgment in favor of Copeland, as Gregory was not acting within the scope of his employment when he arranged and facilitated the attack on Copeland.

The Illinois Local Governmental and Governmental Employees Tort Immunity Act directs a local public entity "to pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is held liable." 745 Ill. Comp. Stat. 10/9-102 (2002). As a result, for Copeland to succeed on his indemnification claim against the County, Copeland must establish that Gregory was acting within the scope of his employment at the time Copeland was attacked. *See Pyne v. Witmer*, 543 N.E.2d 1304, 1309 (Ill. 1989) ("[T]he burden is on the plaintiff to show the contemporaneous relationship between tortious acts and scope of employment.").

To ascertain when an employee's conduct is within the scope of employment, the Illinois Supreme Court has adopted § 228 of the Restatement (Second) of Agency (2004). *Pyne*, 543 N.E.2d at 1308. The Restatement provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
>   (a) it is of the kind he is employed to perform;
>
>   (b) it occurs substantially within the authorized time and place limits;
>
>   (c) it is actuated, at least in part, by a purpose to serve the master; and

    (d)  if force is intentionally used by the ser-
         vant against another, the use of force is
         not unexpectable by the master.

  (2)  Conduct of a servant is not within the scope of
      employment if it is different in kind from that
      authorized, far beyond the authorized time or
      space limits, or too little actuated by a purpose
      to serve the master.

Restatement (Second) of Agency § 228 (2004). Reviewing, the facts of this case, it is undisputed that Gregory was working within the authorized time and space limits of his employment at the time of the beating: Gregory was working in uniform, on his assigned shift, and was working in the area of the jail that he was assigned to guard. Notwithstanding these facts, we find that Gregory's conduct was not within the scope of his employment because Gregory's role in arranging the beating of a pre-trial detainee was not the type of conduct that he was authorized to perform nor was his conduct actuated by a purpose to serve his master, the County of Macon.

## A.   Type Of Conduct

Copeland argues that Gregory's conduct was the type of conduct that he was employed to perform because as a law enforcement officer, Gregory had a responsibility under the Illinois Abused and Neglected Child Reporting Act to report, to help prevent, and to punish child abusers. This argument is not persuasive. The Illinois Abused and Neglected Child Reporting Act, as the name implies, imposes a duty on law enforcement officers "having reasonable cause to believe a child known to them in their professional or official capacity may be an abused child or a neglected child" to "immediately report or cause a report to be made to the Department." 325 Ill. Comp. Stat. 5/4 (2002). This Act does not authorize law enforcement officers to prevent child abuse nor

does it authorize law enforcement officers to punish individuals suspected of committing child abuse. The Act merely requires Gregory to report suspected child abuse, not to take matters into his hands and punish *suspected* child abusers.

Next, Copeland argues that Gregory's conduct was the type of conduct that Gregory was employed to perform because Gregory's responsibility, as a corrections officer, was to control and direct inmates within the jail. Copeland contends that Gregory was simply directing the movement of inmates within the jail when he opened the cell doors and allowed inmates to brutally attack him. This argument fails to recognize that corrections officers have numerous duties, only one of which is to direct inmates within the jail. In general, corrections officers are responsible for a variety of tasks that fall under the umbrella of "enforc[ing] the regulations governing the operation of a correctional institution." *See* Federal Bureau of Prisons, BOP Career Opportunities: Correctional Officer, http://www.bop.gov/jobs/job_descrptions/correctional_officer.jsp (last visited April 8, 2005). In this situation, it is difficult for this Court to believe that Gregory's conduct, in any way, helped to enforce the regulations of the Macon County Jail. The idea that the Macon County Jail would have regulations in place authorizing corrections officers to recruit and assist inmates to attack a pre-trial detainee is ludicrous. Accordingly, this Court rejects the rationale that conduct resulting in multiple people stomping, kicking, and striking the head and body of a pre-trial detainee to the point of unresponsiveness is conduct that enforces the regulations of the Macon County Jail.

Finally, Copeland relies on the holding in *Bryant v. Livigni*, 619 N.E.2d 550 (Ill. App. Ct. 1993), to argue that Gregory's conduct was within the scope of his employment. In *Bryant*, the court found that a grocery store was liable for the actions of its store manager when the manager arrived at work intoxicated, picked up and threw an innocent

four-year-old child, and shouted racial epithets at a customer and her young children. *Id.* at 559. In making this finding, the *Bryant* court stated:

> The master who puts a servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances in the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury on a third person.

*Id.* (quoting *Metzler v. Layton*, 25 N.E.2d 60, 61 (Ill. 1939)). Copeland argues that Gregory's conduct was similar to that of the grocery store manager in *Bryant* because Gregory was placed in a position of trust and responsibility.

Copeland, however, fails to recognize that the manager in *Bryant* was responsible for the "management of [the employer's] business" and "the care of [the employer's] property." In the instant case, Gregory was not responsible for managing the business of Macon County Jail nor was he responsible for taking care of jail property. Gregory was responsible for enforcing the regulations of the jail and guarding prisoners. Although this Court agrees that Gregory's conduct, like the conduct of the store manager in *Bryant*, went "beyond the strict line of his duty or authority," the fact that Gregory was not responsible for the management of the prison nor entrusted with the care of prison property prevents this Court from applying the holding from *Bryant* to the facts of this case.

## B. Purpose To Serve

Only those actions that an employee does to somehow further the purpose of the employer are within the scope of employment. Restatement (Second) of Agency § 228 (2004).

Even if the employee is acting out of malice, ill will, or self-interest, his conduct may still fall within the scope of employment so long as it is motivated, at least in part, by a purpose to serve the master. *Taboas v. Mlynczak*, 149 F.3d 576, 582-83 (7th Cir. 1997). Copeland argues, and the district court agreed, that Gregory's conduct was motivated by an intent to prevent and punish child abuse and that Gregory shared this intent with his employer, the citizens of Macon County.

Copeland argues that the citizens of Macon County, as Gregory's employer, have an interest in preventing and punishing people suspected of child abuse. As an initial point, the citizens of Macon County are not Gregory's employer because citizens of the county do not control the details of Gregory's work. *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 278 (Ill. 2004). "The essence of the contractual relationship known as employment is that the employee surrenders to the employer the right to direct the details of work, in exchange for receiving a wage." *Id.* Although citizen tax dollars are used to pay Gregory's salary, taxpayers do not have the ability to control Gregory's actions nor the actions of any of the corrections officers at the local jail. To determine who has control over an employee, Illinois courts consider such factors as who hired the employee, who directs the manner and nature of the employee's work, and who has the ability to fire the employee. *Williams v. Shell Oil Co.*, 18 F.3d 396, 400 (7th Cir. 1994). Here, the individual citizens of Macon County do not hire corrections officers, do not develop procedures for corrections officers to follow when guarding prisoners, do not supervise corrections officers, and do not have the ability to fire corrections officers. It is the administrators of the Macon County Jail who have the ability to hire, supervise, and fire corrections officers like Gregory. As a result, Gregory's true employer was the Macon County Jail because the administrators of the Macon County Jail, unlike the citizens of Macon County, had the ability to control the details of Gregory's work.

In addition, Gregory's conduct did not in any way serve a purpose of his master. Nothing in the record suggests that Macon County Jail has an interest in preventing and punishing child abuse. Generally speaking, the purpose of jail is "to protect the public from criminal offenders through a system of incarceration and supervision which securely segregates offenders from society, assures offenders of their constitutional rights and maintains programs to enhance the success of offenders' reentry into society." *See* Illinois Dept. of Corrections, Mission Statement, http://www.idoc.state.il.us/mission_statement.shtml (last visited April 8, 2005). Courts, and courts alone, are charged with imposing punishments on convicted criminals, jails merely provide the vehicle for doing so. Therefore, Gregory could not have been acting with the intent to serve his master because his master, the Macon County Jail, is not responsible for preventing and punishing suspected child abusers.

Finally, even if this Court were to accept the argument that the citizens of Macon County would be served by having corrections officers punish child abusers, Gregory's conduct still would not have served that purpose because Copeland was a pre-trial detainee. A pre-trial detainee has not been convicted of a crime and cannot be "punished" by the state. *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1040 (7th Cir. 1998) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). A pre-trial detainee is "between the status of a free citizen and convicted prisoner." *Id.* (quoting *Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996)). Although the public may have an interest in punishing convicted child abusers, one would think that the public does not have an interest in punishing those individuals that are merely suspected of child abuse, and it's certainly true that the state cannot punish individuals merely suspected of child abuse. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation

of the administration of our criminal law." *See Coffin v. United States*, 156 U.S. 432, 453 (1895).


### III.  CONCLUSION

For all the foregoing reasons, we REVERSE the district court's order and grant summary judgment in favor of the County.


A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*