In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1746

URIJA ELSTON,

*Plaintiff-Appellant,*

*v.*

COUNTY OF KANE,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-cv-4979 — **Sara L. Ellis**, *Judge.*

ARGUED NOVEMBER 6, 2019 — DECIDED JANUARY 28, 2020

Before EASTERBROOK, MANION, and BARRETT, *Circuit
Judges*.

BARRETT, *Circuit Judge*. Urija Elston and his friends were
playing basketball at a park in DuPage County while Brian
Demeter, an off-duty sheriff's deputy for neighboring Kane
County, was watching his child's soccer game on an adjacent
field. When Elston and his friends started heckling one an-
other with salty language, Demeter confronted them and de-
manded that they stop using expletives. Flashing both his

badge and gun from under his plainclothes, Demeter also warned the group to "watch who you're messing with." When the boys refused to clean up their language, Demeter grabbed Elston by the neck, threw him to the ground, and climbed on top of him. At some point during the struggle, Demeter tried to pull Elston's arms behind his back, as though attempting to arrest him. Bystanders separated Demeter and Elston, but not before Demeter could rip Elston's shirt in an attempt to keep hold of him.

After the fight broke up, Demeter called 911 from his personal cell phone, identifying himself as a police officer in need of assistance. When Elston's father, whom Elston had called for help, arrived at the park, Demeter explained the incident by saying something along the lines of "I just lost it" or "I snapped." He then told Elston's father that he was a police officer attempting to take Elston into custody for disorderly conduct and that he intended to turn Elston over to the Aurora Police Department.

Elston was never charged with any offense, but Demeter pleaded guilty to violating Aurora's ordinance against battery. Elston then sued Demeter under both 42 U.S.C. § 1983 and Illinois state law, winning a default judgment and an award of $110,000 in compensatory damages.

Elston also sued Kane County under Illinois's Tort Immunity Act, which provides that "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages … for which it or an employee while acting within the scope of his employment is

liable … ." 745 ILCS 10/9-102.[1] Elston maintained that the County was obligated to pay the judgment that he had obtained against Demeter because Demeter was acting within the scope of his employment during the assault. The County moved for summary judgment, the district court granted the motion, and Elston appeals that determination. But the district court got it right. As a matter of law, Demeter was acting as a private citizen, not within the scope of his duties as a sheriff's deputy, when he injured Elston.

Under Illinois law, there are three necessary criteria for an employee's action to be within the scope of his employment. First, the relevant conduct must be of the kind that the employee was employed to perform. Second, the conduct must have occurred substantially within the time and space limits authorized by the employment. And third, the conduct must have been motivated, at least in part, by a purpose to serve the employer. *See Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009) (citing RESTATEMENT (SECOND) OF AGENCY § 228 (AM. LAW INST. 1958)). Because "all three criteria … must be met,"

---

[1] The County correctly argues that the Kane County Sheriff's Office was Demeter's employer and thus the "local public entity" that Elston needed to sue under the Act. *See Carver v. Sheriff of LaSalle Cty.*, 787 N.E.2d 127, 138 (Ill. 2003) (holding that the Sheriff's Office is the "local public entity" under section 10/9-102). The County is also a necessary party, but that is because it is ultimately responsible for funding any judgment entered against the Sheriff's Office—not because it is the "local public entity" that employs Demeter. *Carver v. Sheriff of LaSalle Cty.*, 324 F.3d 947, 948 (7th Cir. 2009) ("[A] county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer … in an official capacity."). But because Elston cannot recover under the Act in any event, it would be futile for him to amend his complaint to add the Sheriff's Office as a defendant.

failure to establish any one of them is sufficient to place conduct outside the scope of employment. *Id.* Thus, to survive the County's motion for summary judgment, Demeter must show that a reasonable jury could find in his favor on all three criteria.

The parties dispute whether Demeter's action satisfied the first criterion—i.e., whether the conduct was of the kind that Demeter would perform as a sheriff's deputy. We're willing to assume for the sake of argument that it was. Even so, Elston cannot succeed because he has not met his burden on the second and third criteria.

On the second, Elston must show that there is a genuine dispute of material fact with respect to whether Demeter's conduct occurred substantially within the time and space limits authorized by his employment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In general, the fact that an employee engaged in conduct outside of work hours, standing alone, is not dispositive. *See Brown v. King*, 767 N.E.2d 357, 361 (Ill. App. Ct. 2001) ("The fact that [an employee] was off duty at the time of the incident does not establish, as a matter of law, that he was acting outside the scope of his employment."). Nor is the mere fact that conduct occurred outside of the spatial boundaries of one's employment. *See* RESTATEMENT (SECOND) OF AGENCY § 234 cmt. a (AM. LAW. INST. 1958) ("One may be a servant, although a bad servant, in performing his master's business at a forbidden place if the place is within the general territory in which the servant is employed."). The determination is a matter of degree: it is dependent on the interaction between both time and place, in light of all the facts. *See id.* § 234 cmts. b & c.

Here, that interaction leads to only one conclusion: that Demeter was not acting substantially within the time and space limits authorized by his employment. Demeter was not on duty during his altercation with Elston; he was spending his day off with his family, watching his child's soccer game. Demeter was not in uniform when he attacked Elston; he was dressed in a t-shirt and shorts. And the assault took place in DuPage County, while Demeter is authorized as a sheriff's deputy only in Kane County. Thus, Demeter was neither on the clock nor within his jurisdiction when he attacked Elston. That, combined with the facts that Demeter was in casual dress and on a family outing, dictates a finding against Elston on this element.

Likewise, no reasonable jury could find for Elston on the third criterion—that Demeter's conduct was caused, at least in part, by a purpose to serve the Sheriff's Office. *See Anderson*, 477 U.S. at 248–49. We've characterized the inquiry as whether "the employee's motive, or at least *a* motive, in committing the tort was to serve his employer." *Doe v. City of Chicago*, 360 F.3d 667, 670 (7th Cir. 2004). While a mixed motive may be enough to create liability, an employee who acts purely in his own personal interest cannot create liability for his employer. *See Wolf v. Liberis*, 505 N.E.2d 1202, 1206 (Ill. App. Ct. 1987).

Demeter had no authority to make an arrest or take other actions to "keep the peace" during the incident. As we've noted, the Office's policy prohibits off-duty deputies from making arrests or performing other enforcement actions outside the jurisdictional limits of Kane County. It is true that an employee's actions do not automatically fall outside the scope of his employment simply because they are prohibited by his employer. *See Gaffney v. City of Chicago*, 706 N.E.2d 914, 923

(Ill. App. Ct. 1998). But a plaintiff must show that the conduct, despite being nominally prohibited by the employer, was nonetheless undertaken to serve the employer's interests. For example, in *Gaffney*, the court held that an off-duty officer acted within the scope of his employment when he negligently stored his unlocked firearm in an unlocked cabinet at home. The gun was used by the officer's son to shoot and kill a victim. The court held that the officer served his employer's interest, at least in part, by storing his gun as he did because he was a Chicago police officer and "'on call' 24 hours a day" in the City of Chicago, so he "desire[d] to have the gun accessible in the event of an emergency." *Id.* at 922. And that was true notwithstanding the fact that the police department's policy prohibited storing official sidearms in that manner. *Id.* at 923.

But not every action motivated by notions of the public interest will count as furthering a government employer's purpose. For example, in *Copeland v. County of Macon*, we held that a correctional officer who encouraged inmates to physically assault a detainee accused of child abuse did not act in furtherance of his county-jail employer's purpose because the jail had no interest in extrajudicially punishing suspected criminals. 403 F.3d 929, 934 (7th Cir. 2005). Instead, the jail's only interest was in protecting the public by incarcerating and supervising offenders, not determining punishments to impose on its wards. *Id.*

Like the correctional official in *Copeland*, Demeter's conduct did not advance any valid goal of his employer. The Kane County Sheriff's Office had no interest in "maintaining the peace" in a *neighboring* county. And it's not as though Demeter was responding to an emergency—no one would

characterize the use of expletives as a crisis. No reasonable jury could conclude that Demeter's actions were motivated, even in part, by an intent to serve his employer's interests. Instead, on his day off with his family, Demeter acted out of personal animus to accost, threaten, and physically assault a teenager for using foul language within earshot of spectators and players at his child's soccer game. The fact that Demeter used his badge, gun, and training in an unauthorized manner in pursuit of that purely personal goal does not bring his conduct within the scope of his employment.

The district court's entry of summary judgment in favor of the County is AFFIRMED.